**In re Robin Bruce McNABB, Debtor.**

No. 2–05–07495–RJH.

United States Bankruptcy Court,
D. Arizona.

June 23, 2005.

Jeffrey A. Sandell, Jaburg & Wilk, P.C., Scottsdale, AZ, for Debtor.

Adam B. Nach, Allison M. Lauritson, Lane & Nach, P.C., Phoenix, AZ, for Trustee.

### Opinion re Application of BAPCPA to Homestead Claims

RANDOLPH J. HAINES, Bankruptcy Judge.

Debtor has moved for abandonment of his residence from the Chapter 7 estate, asserting that the difference between its appraised value and the secured debt is less than the applicable homestead exemption. Because this case was filed after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), however, this raises a number of issues as to which state's exemption statute applies and whether there is an applicable cap or deduction from the

exemption amount. Pending an evidentiary hearing on valuation and, possibly, on the source of the funds to pay for the home, the Court issues this opinion on the legal issues to provide guidance to the parties.

### Background Facts

Debtor Robin Bruce McNabb filed this case on April 28, 2005. He had purchased his home in Arizona on April 15, 2004, and prior to that had lived in California at least since October of 2001.

■ The Debtor's schedule A lists the current market value of the residence at $330,000, which is also supported by an appraisal as of March 23, 2005, that was attached to the Debtor's motion for abandonment. Debtor's schedules A and D reflect a first lien on the property in the amount of $205,500. If Debtor's valuation is correct, the Debtor's equity in the home is $124,500. Arizona is an "opt-out" state,[1] and since August 25, 2004, the Arizona exemption statute provides for a homestead exemption up to $150,000 in equity.[2]

Creditors Trinidad and Emma Ramirez objected to the Debtor's motion for abandonment on several grounds. First, they argue that Bankruptcy Code § 522(b)(3)(A),[3] as amended by BAPCPA, requires the Debtor to claim exemptions pursuant to California law. Second, they argue that Code § 522(p)(1), as added by BAPCPA, imposes a $125,000 cap on the homestead claim because it was acquired less than 1215 days prepetition. Third, they claim that the Debtor was their certified financial advisor who, through fraud and breach of fiduciary duty, caused them to lend him $250,000 on a 10 year interest

---

1. "[I]n accordance with 11 U.S.C. 522(b), residents of this state are not entitled to the federal exemptions provided in 11 U.S.C. 522(d)." A.R.S. § 33–1133(B).

2. A.R.S. § 33–1101.

3. Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

only unsecured note. They contend that these funds may have provided some or all of the funds used to acquire the home. If so, they contend that Code § 522(*o*), as added by BAPCPA, requires a reduction of the homestead claim to the extent of the value obtained through such fraud and invested in the homestead. Finally, they argue that the motion for abandonment should be denied because the value of the home exceeds the amount of the secured debt plus any applicable homestead, and the Chapter 7 Trustee joins in this objection.

## The § 522(b)(3) Amendment Does Not Apply Until October 17

The creditors appear to be correct that if the amendment to Code § 522(b)(3) applies, it means that if a debtor has moved from one state to another within 730 days prepetition, the applicable state exemption law is that of the state where the debtor was domiciled for the greater part of days 731–910 prepetition. That means this Debtor is limited to claiming exemptions under California law. It appears that the California homestead statute limits the exemption to $50,000 for a single debtor

without dependents or $75,000 if married or with dependents.[4]

■ The amendment to Code § 522(b)(3) was made by § 307 of BAPCPA. Generally, BAPCPA becomes effective 180 days after its enactment, or October 17, 2005. There are certain limited exceptions to that general rule in BAPCPA § 1501(b)(2), but BAPCPA § 307 is not among them.

This case is therefore governed by the Bankruptcy Code as it read prior to the enactment of BAPCPA. This means that the Debtor is entitled to claim homestead exemptions according to the law of the state where his domicile was located for the greater part of 180 days prepetition. Because his move to Arizona was more than 180 days prepetition, the Debtor is entitled to claim the Arizona homestead exemption.

## The Homestead Deduction For Fraudulent Transfers Applies Now

■ Bankruptcy Code § 522(*o*) provides that the value of property claimed as a homestead must be reduced to the extent that the value is attributable to any fraudulent transfers[5] of nonexempt property

**4.** CCPC § 704.730. The Court need not here decide whether the California statute would permit a homestead to be claimed with respect to a home in Arizona, whether it permits nonresidents to claim a homestead anywhere, or whether § 522(b)(3) requires different answers to those questions than a California court would provide. *See, e.g., Arrol v. Broach (In re Arrol),* 170 F.3d 934 (9th Cir.1999)(debtor may claim California's homestead exemption as to home in Michigan); *In re Drenttel,* 309 B.R. 320 (8th Cir. BAP 2004)(debtor may claim Minnesota's homestead exemption as to home in Arizona).

**5.** The statutory language requires that the value of an interest in a residence claimed as a homestead "shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in

the 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt....." The phrase "hinder, delay, or defraud" may be a term of art meant to refer to actual fraudulent transfers as defined in Code § 548(a)(1)(A) or in § 4(a)(1) of the Uniform Fraudulent Transfer Act, adopted in Arizona as A.R.S. § 44–1004(A)(1). If so, in the Ninth Circuit this standard requires something more than mere prepetition exemption planning. *Gill v. Stern (In re Stern),* 345 F.3d 1036 (9th Cir.2003); *see also Murphey v. Crater (In re Crater),* 286 B.R. 756 (Bankr.D.Ariz.2002). By using the term "fraudulent transfers" to describe the kind of transfers defined by § 522(*o*) the Court does not here decide whether they are identical to § 548(a)(1)(A) transfers or whether *Stern* remains good law after BAPCPA.

made by the debtor within 10 years pre-petition. Code § 522(o) was added by BAPCPA § 308. BAPCPA § 308 is one of the exceptions to the general effective date rule, because BAPCPA § 1501(b)(2) provides that the amendments made by § 308 shall apply to cases filed on or after the date of enactment. Consequently, Bankruptcy Code § 522(o) applies in this case.

### The $125,000 Homestead Cap Applies Only in Non–Opt Out States

■ Code § 522(p), as added by BAPCPA, applies a $125,000 cap on a homestead if it was acquired by the debtor within 1215 days prepetition, subject to exceptions not applicable here.[6] This provision was added by BAPCPA § 322, which is also among the exceptions to the general effective date rule of § 1501. Consequently Code § 522(p) applies to this case.

However, the $125,000 cap applies only "as a result of electing under subsection (b)(3)(A) to exempt property under State or local law." Code § 522(b)(1) allows debtors to elect to exempt property listed in either paragraph 2 or, in the alternative, paragraph 3.[7] Paragraph 2 refers to the federal bankruptcy exemptions provided by Bankruptcy Code § 522(d), whereas paragraph 3 refers to state exemptions and federal non-bankruptcy exemptions. Thus as it was originally drafted, the Code

contemplated that most debtors would be able to elect either their local state exemptions or the Bankruptcy Code exemptions.

But the election ostensibly made available by § 522(b)(1) may be taken away by a combination of state law and § 522(b)(2). Code § 522(b)(2) provides that the bankruptcy exemptions of § 522(d) may not be elected by a debtor if the applicable state law specifically does not so authorize. This effectively permits states to "opt out" of the Bankruptcy Code's exemptions, and as noted above Arizona is an opt-out state. Consequently in Arizona, a debtor does not get to "elect" state exemptions. Rather, they are the only exemptions available to a debtor, so there is no election to be made.

Yet Code § 522(p) specifically applies only "as a result of electing under subsection (b)(3)(A) to exempt property under state or local law." If the cap of § 522(p) becomes applicable only "as a result of electing," then it can apply only in non-opt out states, i.e., those states where such an election is available.

More than two thirds of the states have opted out of the federal set of exemptions. Indeed, at the time BAPCPA was originally conceived,[8] only two states that had not opted out of the federal exemptions provided homestead exemptions potentially in excess of the $125,000 limit imposed by

---

6. The cap does not apply to a principal residence of a family farmer nor to value attributable the debtor's sale of a residence within the same state that the debtor had acquired more than 1215 days prepetition. Code § 522(p)(2).

7. Technically, these paragraph designations are not yet effective because they were made by BAPCPA § 224, which does not become effective until October 17. However, these paragraph designations are used in BAPCPA §§ 308 and 322, which became effective as to cases filed after April 17.

8. The most prominent feature of BAPCPA is its amendment of § 707 to impose a "means

test" for debtors seeking to file Chapter 7. An outline of this means test may be found in the "Additional Dissent to Recommendations for Reform of Consumer Bankruptcy Law" submitted by Hon. Edith H. Jones and Commissioner James I. Shepard, at 16–19, found in Chapter 5 "Individual Commissioner Views" of the NATIONAL BANKRUPTCY REVIEW COMMISSION FINAL REPORT (Oct.1997) (hereafter "1997 Commission Report"). Consequently it seems fair to conclude that the essence of what became BAPCPA was conceived around the time of the issuance of the 1997 Commission Report.

§ 522(p)—Texas, with an unlimited homestead value, and Minnesota with a $200,000 maximum homestead.[9]

Legislative history is virtually useless as an aid to understanding the language and intent of BAPCPA. The section-by-section analysis in the Report of the House Committee on the Judiciary merely provides a gloss of the statutory language of BAPCPA § 322. It does not provide an example of the kind of problem or abuse it was intended to correct, nor a citation to a case whose result it sought to alter. Consequently it provides no clue to the intended significance of the "as a result of electing" language. Both the majority and the dissents to the 1997 Commission Report are similarly unhelpful as to the significance of this language.[10]

■■■■ It really is not for this Court to speculate on Congress's purposes when the language is clear and unambiguous. Only if the statutory language is ambiguous or would lead to absurd results should a Court attempt to discern legislative intent.[11] Here there is no ambiguity nor

absurdity in result. The language is unambiguous in stating that the cap is imposed only "as a result" of an election, so if there is no election there can be no cap. And the result can hardly be deemed absurd, when it is consistent with 163 years of bankruptcy law. The Bankruptcy Act of 1841 provided uniform federal exemptions with no opt out provision, and it was repealed in about a year. That was the last time Congress attempted to impose uniform federal exemption laws, at least until BAPCPA. The Act of 1867, the Act of 1898, and the Code of 1978 all permitted states to provide their own exemption laws. Indeed, the Act of 1867 was hotly debated and allowing states to provide their own exemptions was one of the key compromises that was essential to its ultimate passage.[12]

This conclusion from the statutory language is supported by three other provisions of BAPCPA. If the intent had been to apply the cap to *all* state exemptions, whether by election or by default and in both opt in and opt out states, it would

**9.** The 1997 Commission Report listed state homestead exemptions in order of value. *Id.* at 299–300. It reported that five of the six states that had unlimited values for homestead exemptions (Florida, Iowa, Kansas, South Dakota and rural property in Oklahoma) had opted out, and only Texas had not opted out. For states that imposed dollar limits, only Minnesota's limit of $200,000 exceeded the § 522(p) $125,000 cap (although as noted above by today Arizona's $150,000 limit also exceeds that cap). Although the Report of the Committee on the Judiciary of the House of Representatives stated the bill "restricts the so-called 'mansion loophole,'" which it identified as permitting "debtors living in certain states [to] shield from their creditors virtually all of the equity in their homes," it did not identify those "certain states." H. Rep. 109–31, 109th Cong., 1st Sess., text accompanying footnote 71.

**10.** The 1997 Commission Report recommended that the opt out be eliminated entire-

ly. Commission Report § 1.2.1, at 121–25. The dissent differed with the majority on the amounts of the uniform federal exemptions proposed by the majority, but appeared to agree that the Commission should recommend uniform federal exemptions while leaving the amounts to Congress. "Recommendations for Reform of Consumer Bankruptcy Law by Four Dissenting Commissioners," at 25. If the opt out option were eliminated, then all debtors would be entitled to elect between state and federal exemptions, so the cap of § 522(p) would apply across the board.

**11.** "The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas*, 502 U.S. 151, 158, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991).

**12.** *See* Randolph Haines, *Getting to Abrogation*, 75 Am. Bankr.L.J. 447, 462–63 (2001).

have been a simple matter to delete the "as a result of electing" phrase entirely. Indeed, when Congress clearly did intend its new limitations to apply both in opt in and opt out states, there is a model for drafting such language in the immediately preceding paragraph. Bankruptcy Code § 522(*o*) · simply says: "For purposes of subsection (b)(3)(A)," the value of property claimed as a homestead shall be reduced by the amount of fraudulent transfers that contributed to it. That provision unambiguously applies to *all* state exemptions available under § 522(b)(3)(a), regardless of whether they resulted from an election or not. If Congress had similarly intended the $125,000 cap found in § 522(p) to apply across the board, it would presumably have used the identical language: "For purposes of subsection (b)(3)(A), a debtor may not exempt any amount" that was acquired during 1,215 days prepetition. There would have been no need to refer to an election at all.[13] This striking difference between the language of § 522(*o*) and § 522(p) must have been intended to effect a difference in result. The somewhat convoluted language of § 522(p) must have been intended to impose a condition beyond that of the far simpler language of § 522(*o*).

This reading of "as a result of electing" is further bolstered by two other provisions that are also apparently triggered by such an election. New Code § 522(q) provides that "as a result of electing under subsection (b)(3)(A) to exempt property under state or local law, debtor may not exempt" more than $125,000 if he has been convicted of a felony or owes a debt arising from securities fraud, breach of fiduciary duty, etc. What gives special significance

to this "as a result of electing" language is new Code § 727(a)(12), which requires denial of the discharge if the court makes two findings: (A) that § 522(q)(1) "may be applicable to the debtor," and (B) there is pending a proceeding in which the debtor may be found guilty of a felony or liable for a debt of the kind described in 522(q)(1). Subparagraph A of § 727(a)(12) necessarily implies that § 522(q)(1) "may be applicable" to some debtors and not to others, because such applicability is a discrete finding the court is required to make. Subparagraph B of § 727(a)(12) necessarily implies that the determination under (A)—whether § 522(q)(1) may be applicable to the debtor—is something separate and distinct from the finding that there is pending a proceeding in which the debtor may be found guilty of a felony or liable for a debt of the kind described there. What would make § 522(q)(1) applicable, or not applicable, to a debtor *other than* the pendency of such a proceeding? Other the pendency of such a proceeding, the only other factor that could determine whether § 522(q)(1) "may be applicable" to a debtor is whether a debtor elects to claim state exemptions. A court would not need a hearing to find reasonable cause to believe that a debtor has elected state exemptions in states where no such election is available. If Congress had intended to deny the discharge to *all* debtors who were the subject of pending criminal or civil proceedings of the kind described in § 522(q)(1), there would have been no need to require a separate finding that § 522(q)(1) "may be applicable" to a debtor. The statute clearly requires two triggers for this rule, and the only thing the

---

13. Indeed, one wonders why Congress took pains to make the cap apply only to state exemptions. Because the federal homestead exemption approaches nowhere near the $125,000 cap, it would have been much simpler to drop *any* reference to the state exemptions laws. The provision could have simply read: "A debtor may not exempt any amount...."

first one can refer to is a debtor's election of state exemptions, in a state where such an election is available.

It has been reported that a "technical amendments" bill is in the works to fix various glitches in BAPCPA, notwithstanding Congressional testimony that it was so perfect that not a word need be changed. Perhaps this is one of those glitches. If so, Congress can easily fix it. Frankly, this Court believes it should, because it makes little sense to limit the cap to the few remaining non-opt out states, nor to permit debtors to shield assets by obtaining a homestead in some other state merely because that state precludes the alternative of claiming far less generous federal exemptions. Until Congress does fix it, however, the Court must apply the unambiguous statute as written. The cap applies only "as a result of electing." Where there is no election, the cap cannot be the result. Because Arizona is an opt out state that does not permit debtors to make any elections of which exemptions to claim, the $125,000 cap of Code § 522(p) is not implicated.

**Valuation Requires an Evidentiary Hearing**

Finally, the creditor and the trustee have objected to the debtor's motion for abandonment by challenging the debtor's valuation and appraisal of his residence at $330,000. This creates a fact dispute that requires an evidentiary hearing to resolve. The court has set an evidentiary hearing for August 22, with a joint pretrial statement due by August 15.