In re Elona KAPLAN, Debtor.

No. 05–14491–BKC–RAM.

United States Bankruptcy Court,
S.D. Florida.

Oct. 6, 2005.

Thomas M. Messana, Esq., Scott A. Underwood, Esq., Ruden McClosky, Ft. Lauderdale, FL, for trustee.

Richard P. Birkenwald, Esq., North Miami Beach, FL, for Debtor.

### MEMORANDUM OPINION AND ORDER SUSTAINING TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS

ROBERT A. MARK, Chief Judge.

After reading the several hundred pages of text in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Reform Act"), one conclusion is inescapable. The new law is not a model of clarity. Implementing the changes will present a daunting challenge to judges, clerk's offices, attorneys and the parties who seek relief in the bankruptcy court after October 17, 2005, the date most of the provisions become effective.

One issue which has already arisen involves the new $125,000 cap on homestead which the Reform Act imposes on debtors under certain specific circumstances, even if applicable state exemptions allow greater or unlimited protection. In *In re McNabb*, 326 B.R. 785 (Bankr.D.Ariz. 2005), the court held that the $125,000 cap in new sections 522(p) and § 522(q) of the Bankruptcy Code only apply in non opt-out states, that is, states in which a debtor may choose between state or federal exemptions. More than two-thirds of the states have opted out of the federal exemptions and, if *McNabb* is followed, these new caps would only apply in Texas and Minnesota, not in states like Arizona or Florida, in which debtors must utilize state exemptions.

The *McNabb* decision finds support in one view, albeit a very narrow and mechanical view, of statutory interpretation. Having said that, the Court finds the result to be wrong when the time-tested rules of statutory construction are applied with open eyes.

### *Factual and Procedural Background*

The Debtor filed her Chapter 7 petition on May 17, 2005. Her property claimed as exempt on Schedule C includes a condominium located in Sunny Isles, Florida (the "Property"). The Debtor values the Property at $280,000. Schedule D lists a

first mortgage debt of $181,000. If the numbers are accurate, the Debtor's equity in the Property is about $99,000, under the $125,000 cap, even if the § 522(p) limitation is applicable.

The Trustee's Objection to Debtor's Claimed Exemptions (the "Objection") (CP# 4) was filed timely on July 13, 2005. The Objection asserts that the Property is worth between $325,000 and $350,000, which would mean the Debtor's equity is between $144,000 and $169,000. The Trustee asserts that any equity over $125,000 is not exempt since the Debtor acquired the Property within 1215 days of the Filing Date triggering application of the $125,000 exemption limitation in § 522(p).

The Debtor filed her Answer to Trustee's Objection to Debtor's Claimed Exemptions on July 25, 2005 ("Debtor's Response") (CP# 6). The Debtor argues that § 522(p) is not applicable in Florida, citing *McNabb*. The Debtor also challenges the Trustee's valuation of the Property.

An August 16, 2005, hearing on the Objection was continued at the Trustee's request to allow time for briefing. On September 22, 2005, the Trustee filed his Reply to Answer to Objection to Claimed Exemptions and Memorandum of Law (the "Trustee's Memorandum") (CP# 25). The Court conducted a hearing on the Objection on September 27, 2005. Factual issues regarding the value of the Property were raised in the papers and at the hearing. However, because of the importance of the legal issue presented, the Court has deferred the valuation dispute and expedited issuance of this Memorandum Opinion which solely addresses whether § 522(p) of the Bankruptcy Code applies to debtors claiming exemptions under Florida law.

## Discussion

Sections 308 and 322 of the Reform Act add three new subsections to the exemptions provisions in § 522 of the Bankruptcy Code which limit the homestead exemption, § 522(*o*), (p) and (q). Although most of the provisions in the Reform Act apply to cases filed after October 17, 2005, these new homestead limitations apply to all cases filed after the date of enactment, April 20, 2005. *See* Reform Act § 1501(b)(2). Therefore, if § 522(p) applies in Florida, it applies to this case which was filed on May 17, 2005.

Sections 522(*o*) and (q) limit the homestead exemptions in certain circumstances involving "bad acts" by a debtor. Those sections have no application in this case. The Debtor here is accused of no misconduct; she simply acquired the Property less than 1215 days before the filing date. Under these facts, the relevant section is § 522(p) which imposes a $125,000 cap on equity acquired within 1215 days.

Section 522(p)(1) provides as follows:

(p)(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215–day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in–

(A) real or personal property that the debtor or a dependent of the debtor uses as a residence;

(B) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;

(C) a burial plot of the debtor or a dependent of the debtor; or

(D)real or personal property that the debtor or dependent of the debtor claims as a homestead

## A. *The McNabb Decision*

The *McNabb* decision analyzed the statute to determine whether it applied in Arizona. The legal issue is identical in this case since Arizona, like Florida, is a state which allows a homestead exemption in excess of $125,000 and is an opt-out state, that is, a state like Florida in which debtors must apply the state exemptions in a bankruptcy case. *See* Fla. Stat. § 222.20 (Florida residents may not utilize federal exemptions).

The *McNabb* court held that neither § 522(p) or § 522(q) apply to debtors claiming Arizona's homestead exemption. The court reached this result by focusing on the phrase "as a result of electing under subsection (b)(3)(A) to exempt property under state or local law, a debtor may not exempt ..." Reading this clause literally and narrowly, *McNabb* concluded that these sections can only apply to debtors who live in states which allow debtors in bankruptcy to utilize either state or federal exemptions. 326 B.R. at 791. The court recognized that this interpretation would result in these sections being applicable in only the two states, Texas and Minnesota, which allow debtors to choose between federal and state exemptions, and also allow homestead exemptions in excess of $125,000.

*McNabb* recognized that "it makes little sense to limit the cap to the few remaining opt out states, nor to permit debtors to shield assets by obtaining a homestead in some other state merely because that state precludes the alternative of claiming far less generous federal exemptions." *Id.* at 791. Nevertheless, the court held that the language unambiguously limits application of these sections to non opt-out states.

The *McNabb* decision is supportable based on the language as drafted, interpreted using narrow rules of statutory construction. However, this Court strongly disagrees with the result. Simply stated, the canons of statutory construction permit the Court to consider legislative intent in these circumstances. And, when the intent of Congress is considered, there is absolutely no doubt that the statute was intended to apply in *all* states, including Florida, which allow homestead exemptions in excess of $125,000.

## B. Legislative History Should be Considered

 The preeminent canon of statutory interpretation requires a court to "presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Any inquiry begins with the statutory text, and ends there as well if the text of the statute is unambiguous. *Id.* at 254, 112 S.Ct. 1146. However, a court may look to "legislative history if the statutory language is unclear." *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see also U.S. v. Pringle*, 350 F.3d 1172, 1180 n. 11 (11th Cir.2003) (when a statute is ambiguous "other interpretative tools may be used, including an examination of the act's purpose and of its legislative history.").

 The shaky platform supporting the *McNabb* decision collapses unless the phrase "as a result of electing under subsection (b)(3)(A) to exempt property under State law" unambiguously means the statute only applies to debtors who can choose between federal and state exemptions. This Court does not agree that the language is unambiguous, particularly when viewed under the somewhat awkward

structure of § 522. Section 522(b)(1) essentially states that debtors can choose to exempt property under (b)(2) or (b)(3). Choosing § 522(b)(2) takes you to the federal exemptions in § 522(d) unless the state law applicable under (b)(3) says you must apply state law, that is, the state has opted out.

Looking at this statutory scheme, there is another plausible meaning to the phrase "as a result of electing" besides limiting the caps to non-opt out states. This Court suggests that Congress was simply (albeit inartfully) intending the phrase to describe those debtors who are utilizing state law exemptions under § 522(b)(3), whether they have a choice or not. Under this interpretation, the key language in the clause is its reference to § 522(b)(3), which refers to state exemptions that are the subject of the new dollar limitation, not the use of the word "electing."

Did Congress choose the best language to accomplish the intended purpose? Obviously, the answer is no. But is it language which unambiguously excludes opt-out states from the statute's reach? The answer here is also no. It is not as if Congress plainly said, in the preamble "As to only those debtors living in Minnesota or Texas ..." or "As to only those debtors who live in states allowing debtors to choose between state and federal exemptions." If that was the language, peculiar as the intent would be, the statute would be unambiguous. As written, however, with more than one plausible reading, there is sufficient ambiguity to look at the legislative history to confirm legislative intent.

██ Moreover, even accepting the holding in *McNabb* that the "plain mean-

ing" appears to limit the provisions to non opt-out states, the legislative history of the Reform Act should still be considered. The plain meaning of the statute is rebutted only in limited circumstances when a contrary legislative intent is clearly expressed. *Ardestani v. I.N.S.*, 502 U.S. 129, 135–36, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991). "In such cases, the intention of the drafters, rather than the strict language, controls." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 243, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *see also General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004) (holding that the Age Discrimination in Employment Act did not allow for reverse age discrimination suits even though plain reading of the statute appeared to allow for such suits). Courts must be wary of taking literalness to its extreme because "statutory construction confining itself to bare words ... may strangle meaning." *Lynch v. Overholser*, 369 U.S. 705, 710, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962).

**C. The Legislative History is Clear—Congress Intended to Limit the Homestead Exemption in Florida**

██ Looking to the legislative history of the Reform Act, there is no doubt about what Congress intended. Contrary to the assertion in *McNabb* that the legislative history "is virtually useless as an aid to understanding the language and intent," 326 B.R. at 789, the Reform Act is replete with references demonstrating that the new homestead limitations in § 522(p) and (q) were intended to apply to all states in which debtors could previously exempt amounts in excess of $125,000.[1] In the

---

1. *See, e.g.*, 151 Cong. Rec. H1993–01, 2048 (2005) (statement of Rep. Sensenbrenner that the new homestead limitations close the

" 'millionaire's mansion' loophole in the current bankruptcy code that permits corporate criminals to shield their multi-million dollar

aggregate, these legislative references overwhelmingly and convincingly show legislative intent in clear conflict with the result reached in *McNabb*. As succinctly stated in the House Report accompanying Senate Bill 256, which later resulted in the Reform Act:

> [t]he bill also restricts the so-called "mansion loophole." Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate to these states just to take advantage of their "mansion loophole" laws. S. 256 closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim that state's homestead exemption; the current requirement can be as little as 91 days. The bill further reduces the opportunity for abuse by requiring a debtor to own the homestead for at least 40 months before he or she can use state exemption law; current law imposes no such requirement.

H.R.Rep. No. 109–31, at 15–16 (2005), U.S.Code Cong. & Admin.News 2005, pp. 88, 102 (internal citations omitted). Nowhere within the Report is it ever suggested that the homestead limitations in the Reform Act are limited to Texas and Minnesota as concluded in *McNabb*. To arrive at this result based on a strained and convoluted use of statutory interpretation in the face of this unambiguous legislative intent is simply wrong.

### *Conclusion*

■ To be sure, the drafters messed up by using the phrase "as a result of elect-

ing" in the opening sentences of § 522(p) and (q). However, a court must recognize that its role is not to be vindictive to its legislative colleagues when it can and should interpret and apply a statute as intended. There is not a single shred of legislative history or commentary during the several years of debate regarding the homestead exemption suggesting that Congress intended to apply the new caps in only a couple of non opt-out states. In fact, it is common knowledge that Florida's unlimited homestead was at the heart of the legislative debate.

Over the coming months, or years, courts will need to wrestle with some interpretation issues in calculating the available exemptions under the cap in § 522(p) and (q), including, for example, how to handle appreciation in the property. Courts should focus on these issues and the scores of other issues arising under the Reform Act that will engender bona fide debate. This issue, however, should not engender such debate. Determining whether the homestead caps apply in Florida should not be in dispute and should not distract us further. This Court sincerely hopes that there will be uniformity amongst the Florida judges in finding, as this Court does with certainty, that the limitations in § 522(p) and (q) apply to debtors claiming exemptions under Florida law. Therefore, it is—

**ORDERED** as follows:

1. The Objection is sustained in part. Section 522(p) applies to the Debtor's homestead exemption.

homesteads"); *id.* at S2415–02 (statement of Sen. Carper that "under current law, a wealthy individual in a State such as Florida ... can go out ... and invest that money in ... a huge house file for bankruptcy, and basically protect all of their assets.... With the legislation we have before us, someone has to figure out that 2½ years ahead of time people are going to want to file for bankruptcy and be smart enough to put the money into a home ....").

2. By separate Order, the Court will schedule a valuation hearing to determine the amount of non-exempt equity, if any, in the Property.