In re Alfred Thomas **RASMUSSEN** and Billie Jo Rasmussen, Debtors.

No. 8:05–bk–20277–MGW.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 8, 2006.

Christopher D. Smith, Esq., Christopher D. Smith, P.A., Sarasota, FL, for Debtors.

### MEMORANDUM DECISION AND ORDER OVERRULING TRUSTEE'S OBJECTION TO DEBTORS' HOMESTEAD EXEMPTION

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

Under Florida law, debtors have an unlimited homestead exemption. However, new section 522(p) of the Bankruptcy Code[1] now caps the amount of a homestead exemption at $125,000 if a debtor acquires an interest in a homestead within 1,215 days of filing for bankruptcy. The debtors in this case acquired their homestead within 1,215 days of the date they filed their joint petition for bankruptcy. The chapter 7 trustee ("Trustee") objected to the debtors' claim of a homestead exemption based on section 522(p). Section 522(m) provides that the provisions of section 522, which includes section 522(p), shall apply separately with respect to each debtor in a joint case. Accordingly, each Debtor in this joint case may separately claim a homestead exemption of $125,000 for a total exemption of $250,000. Because

the Debtors' equity in their homestead was less than $250,000 on the date of the petition, the Trustee's objection is overruled.

In addition, to the extent that equity in the homestead at the time of the petition resulted from appreciation, such appreciation does not constitute an interest that was acquired by the debtor within the meaning of section 522(p). Because the Trustee's objection depends on a construction of section 522(p) that would include appreciation as part of the interest acquired within the 1,215–day period, the Trustee's objection is overruled on that ground as well.

### I. Factual Background

The debtors in this joint chapter 7 case, Alfred Thomas Rasmussen and Billie Jo Rasmussen ("Debtors"), claimed their homestead in Sarasota, Florida ("Homestead") as exempt under article X, section 4 of the Florida Constitution. The Debtors purchased their Homestead for approximately $350,000 on June 7, 2002, and filed their petition on September 28, 2006—1,210 days after acquiring their homestead. The Debtors funded the purchase by using approximately $35,000 rolled over from the sale of Mr. Rasmussen's previous homestead located in Longboat Key, Florida, additional cash of approximately $1,800, and a $320,300 loan from a bank.

According to the Debtors' Schedule A, the Homestead had a value of $750,000 as of the petition date, reflecting appreciation of approximately $400,000 since its purchase. Schedule D lists mortgage debts in the aggregate amount of approximately $575,000 secured by the Homestead. There is no dispute that as of the petition

---

1. All references herein to "section" shall mean a section of Title 11 of the United States Code, also known as the Bankruptcy Code.

date the Debtors' equity in their Homestead was approximately $175,000.

The Trustee filed an objection to the Debtors' homestead exemption (Doc. No. 11)("Objection") relying upon new section 522(p) of the Bankruptcy Code, which applies to a homestead acquired during the 1,215–day period preceding the date of filing of a bankruptcy petition. Based on this provision, the Trustee contends that the Debtors are allowed to claim only a single $125,000 exemption of their Homestead plus any amount rolled over from a previous homestead. Thus, under the Trustee's theory, after deducting the mortgage debt, the amount rolled over from Mr. Rasmussen's previous homestead, and the $125,000 allowed under section 522(p), at least $13,000 would be property of the estate. However, the Debtors argue that each spouse may claim the $125,000 exemption, allowing for a "stacked" exemption of $250,000, which would leave nothing for the estate. Alternatively, the Debtors contend that equity appreciation is not an interest that was acquired by them during the 1,215–day period, and, therefore, section 522(p) provides no remedy to the Trustee in this case.

## II. *Issues*

The issues raised by the Objection and the Debtors' response are: 1) whether the Debtors may "stack" the $125,000 exemption under section 522(p) and receive a total joint exemption of $250,000; and 2) whether the increase in value of the Home-

stead attributable to appreciation falls within the section 522(p) cap.

## III. *Jurisdiction*

This court has jurisdiction of this matter under 28 U.S.C. sections 157 and 1334(b). This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(B).

## IV. *Conclusions of Law*

### A. Operation of Section 522(p)

On April 20, 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC-PA"). Although the bulk of BAPCPA went into effect on October 17, 2005, new section 522(p)—the section at issue here—became effective immediately. Because the Debtors filed their petition on September 28, 2005, section 522(p) applies to this case.

Section 522(p) provides that "a debtor may not exempt any amount of interest [in homestead property] that was acquired by the debtor during the 1215–day period preceding the date of filing of the petition that exceeds in the aggregate $125,000 in value...." By its terms, this provision becomes applicable "as a result of electing ... to exempt property under State ... law...." In this regard, section 522(b)(1) provides to an individual debtor an election under which the debtor may exempt property either under the federal exemptions set forth in section 522(d) or under the applicable state and non-bankruptcy federal exemptions. 11 U.S.C. §§ 522(b)(2), 522(b)(3)(2005).[2]

**2.** Sections 522(b) and 522(p) provide in pertinent part:

**(b)**

(1) ... [A]n individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are

husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (3) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (2), where such election is permitted

A debtor's right to elect the federal exemptions set forth in section 522(d) is, however, subject to an important limitation. The choice of federal exemptions under section 522(d) is not available to debtors in states where "State law ... specifically does not so authorize."

Florida law provides that Florida residents "shall not be entitled to federal exemptions in § 522(d). . . ." Fla. Stat. Ann. § 222.20 (West 2006). This is commonly referred to as the "opt-out" provision. The result of Florida's opt-out is that Florida residents do not have an election to use the federal exemptions under subsection (b)(3)(A). Rather, they are restricted to state law exemptions by subsection (b)(2), which authorizes states to opt out, and the Florida "opt-out" provision. The lack of an election to choose between federal and state exemptions in opt-out states led at least one court to conclude that section 522(p) does not apply to residents of opt-out states such as Florida because it is predicated on the exercise of an "election" that Florida residents do not have. *In re McNabb,* 326 B.R. 785, 789–790 (Bankr. D.Ariz.2005). The issue of the applicability of subsection (p) of section 522 in opt-out states such as Florida has been considered by a number of courts since the decision in *McNabb.* These courts have generally rejected the rationale and holding of McNabb. *See, e.g., In re Kane,* 336 B.R. 477, 481–482 (Bankr.D.Nev.2006)(holding that section 522(p) was designed to close "the 'millionaire's mansion' loophole in the current bankruptcy code that permits corporate criminals to shield their multi-million dollar homesteads"); *In re Virissimo,* 332 B.R. 201, 207 (Bankr.D.Nev.2005).

■ Florida courts considering the issue have uniformly rejected *McNabb. See In re Buonopane,* 344 B.R. 675, 677 (Bankr.M.D.Fla.2006); *In re Landahl,* 338 B.R. 920, 921 (Bankr.M.D.Fla.2006); *In re Wagstaff,* 2006 WL 1075382 *2 (Bankr. S.D.Fla. Mar.17, 2006); *In re Wayrynen,* 332 B.R. 479, 484 (Bankr.S.D.Fla.2005); *In re Kaplan,* 331 B.R. 483, 484 (Bankr. S.D.Fla.2005). This Court is in full agreement with the analysis contained in the Florida decisions dealing with this issue and concludes that subsection 522(p) applies in Florida, notwithstanding the fact that, in Florida, an individual has no right to elect between federal and state exemptions by virtue of Florida Statutes section 222.20.

Turning then to the terms of section 522(p)—as an initial observation, it is clear

under the law of the jurisdiction where the case is filed.

(2) Property listed in this paragraph is property that is specified under subsection (d) unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

(3) Property listed in this paragraph is—

(A) subject to subsections (*o*) and (p), any property that is exempt under federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition. . . .

* * *

(p)

(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215–day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in—

(A) real or personal property that the debtor or a dependent of the debtor uses as a residence;

* * *

(2) (B) For purposes of paragraph (1), any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215–day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State.

that a debtor's intent to shield property from creditors is not a factor. In fact, in light of section 522(*o*), which deals with such intent, section 522(p) is not designed to deal with fraudulent conversions of property at all. It is simply a cap to be applied in cases in which a debtor happens to have acquired an interest in a homestead within the three years and four months prior to filing bankruptcy.

■ Simply stated, the effect of section 522(p) is that the value of the homestead derived from any money in excess of $125,000 that is put into a relatively recently acquired homestead will not be exempt in the debtor's bankruptcy. The only exception to the $125,000 cap is for money derived and rolled over from the sale of a prior homestead within the state of Florida. 11 U.S.C. § 522(p)(2)(B)(2005). Thus, homestead value acquired by the debtor from money derived from the sale of even exempt assets, other than a prior homestead, is also not exempt.

While the operation of this provision seems straightforward, left unclear are the issues in this case: (1) whether both spouses in a joint case have the right to each exempt $125,000 of equity in a homestead, and (2) whether appreciation that occurred during the 1,215–day period counts toward the $125,000 cap.

### B. Stacking of the Homestead Exemption

■ The concept of joint debtors "stacking" the $125,000 exemption for each spouse may initially seem contrary to the much-publicized $125,000 cap set forth in revised section 522 and discussed in the legislative history. It is not, however, inconsistent with current practice under Florida law and the Bankruptcy Code governing other exemptions. In this respect, it is clear under Florida law that each debtor gets to claim exemptions separately. For example, each spouse is entitled to the constitutional exemption for $1,000 of personal property even though the personalty is jointly owned, resulting in an aggregate exemption of $2,000. Fla. Const. art. X, § 4(a)(2); *In re Howe*, 241 B.R. 242, 245 (Bankr.M.D.Fla.1999); *In re Moody*, 241 B.R. 238, 241 (Bankr.M.D.Fla.1999). Likewise, each spouse is entitled to a $1,000 exemption for an automobile. Fla. Stat. § 222.25(1) (2006).

The separateness of the husband and wife for bankruptcy purposes is recognized in section 302, "Joint Cases," which, while allowing a joint petition, provides that "[a]fter the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated." This section is implemented by Rule 1015, Federal Rules of Bankruptcy Procedure, which provides that if a joint petition is pending by a husband and wife, the court may order a joint administration of the estates. Rule 1015 provides in pertinent part as follows:

> Prior to entering an order the court shall give consideration to protecting creditors of different estates against potential conflicts of interest. An order directing joint administration of individual cases of a husband and wife shall, if one spouse has elected the exemptions under section 522(b)(1)[federal exemptions under section 522(d)] and the other has elected the exemptions under section 522(b)(2)[state exemptions], fix a reasonable time within which either may amend the election so that both shall have elected the same exemptions.

Fed. R. Bankr.P. 1015(b).

■ This rule recognizes that each spouse has the right to choose the available exemptions with the only restriction that the spouses must agree to either the federal exemptions or the state exemptions; that is, "stacking" of federal exemp-

tions on top of state exemptions is not permitted. 11 U.S.C. § 522(b)(1). In this district, Rule 1015 is implemented by Local Rule 1015–1, which provides that if a joint petition is filed by a husband and wife, the trustee shall administer their estates jointly without order of the court subject to the right of a party to move for an order of separate administration.

■■ There is nothing in the language of section 522(p) that would indicate a contrary result. That section clearly says "a" debtor is subject to the cap. Although section 102(7) provides that "the singular includes the plural," whether only one debtor may claim the exemption or whether both debtors may do so separately—and thus whether a debtor is to be considered in the singular or plural—is a matter of state exemption law in opt-out states. *First Nat'l. Bank of Mobile v. Norris,* 701 F.2d 902, 905 (11th Cir.1983). In this case, as discussed above, Florida allows both debtors to claim homestead exemptions.

Interestingly, for most of its history, Florida law provided otherwise. That is, Florida used to restrict the homestead exemption to the head of a household. This archaic practice was repealed in a 1985 amendment to the Florida Constitution. Now each spouse, regardless of head of household status, may claim a homestead. *See, e.g., Snyder v. Davis,* 699 So.2d 999, 1002 (Fla.1997); *Public Health Trust of Dade County v. Lopez,* 531 So.2d 946, 948 (Fla.1988).

■ In the case of non-opt-out states, the rights of individual debtors who are spouses to claim their exemptions separately is protected through the application of section 522(m). This provision provides that "[s]ubject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case." 11 U.S.C. § 522(m). Section 522(m) is, by its terms, subject to the limitation imposed by subsection (b), but that limitation simply prohibits the stacking that could otherwise occur in non-opt-out states if one spouse were to choose the section 522(d) exemptions provided by the Bankruptcy Code and the other were to choose the state exemptions and federal exemptions available outside section 522(d).

■ The Eleventh Circuit has concluded that the reference in section 522(m) to "this section" means to section 522, which includes the federal exemptions in section 522(d), and thus applies to debtors claiming federal exemptions in non-opt-out states. *Norris,* 701 F.2d at 905 ("[b]ecause section 522(m) applies only to 'this section,' 11 U.S.C. § 522, it neither applies to Alabama exemptions nor conflicts with the Alabama provision allowing only one homestead exemption to joint debtors."). Accordingly, section 522(m) does not create any rights under state laws that do not otherwise exist. For example, in *Norris* the Eleventh Circuit held that applicable Alabama law limiting debtors to a single $2,000 homestead exemption would apply in bankruptcy and not be controlled by section 522(m)(which is restricted by its terms to the provisions contained in section 522). *Norris,* 701 F.2d at 905.

■ But, unlike Alabama law, Florida law contains no specific limitation as to the right of either spouse to claim a homestead exemption in an unlimited amount under article X, section 4 of the Florida Constitution and, indeed, provides an express entitlement to each. That is not to say that Florida law contains no restrictions on the availability of its unlimited homestead exemption. For example, married spouses residing in separate residences may claim a homestead for each residence only if they legitimately live apart in separate residences. *In re Colwell,* 196 F.3d 1225,

1226 (11th Cir.1999); *Law v. Law,* 738 So.2d 522, 524 (Fla. 4th DCA 1999). Further, although there is no Florida authority for each spouse to separately claim 160 acres in the same parcel for a total of 320 acres, other states dealing with this issue have generally rejected debtors' attempts to double up on acreage. *See, e.g., In re Arnold,* 73 P.3d 861, 865 (Okla.2003); *Commerce Bank of Kansas City v. Odell,* 16 Kan.App.2d 704, 827 P.2d 1205, 1209 (1992).

The Trustee's argument in this case is premised in large part on how courts generally have viewed debtors' attempts to double up on limited homestead monetary exemptions. A number of states restrict the right of debtors to double up on the value of a homestead either by statute[3] or by case law.[4] And just as in *Norris,* because of the limitation of section 522(m)'s reference to "this section"—referring to section 522 and thus making it inapplicable to state law exemptions—section 522(m) is not available to alter the outcome under state law.

The Trustee's attempt to extend the logic of these cases to this case is not persuasive, however, because unlike the states referenced above that have limitations in the value of a homestead for exemption purposes, Florida's homestead exemption is unlimited in amount. Importantly, the only limitation to the right of a Florida debtor to exempt an unlimited amount of homestead in value is found in section 522(p).

■ Accordingly, section 522(m)'s reference to "this section" makes clear that section 522(m) applies to new section 522(p), the provision limiting the homestead exemption. Thus, under section 522(m), section 522(p) "shall apply separately with respect to each debtor in a joint case." And while Florida residents each have a homestead exemption unlimited as to value under applicable Florida law, that value is limited to $125,000 by section 522(p) applied "separately with respect to each debtor in a joint case." 11. U.S.C. § 522(m); *see also* 4 Collier on Bankruptcy ¶ 522.13[4], at 522–102.8–522–102.9 (rev. 15th ed.2006)(noting the "absence in the 2005 Act of any express or implied limitation on section 522(m)" in reference to its application to 522(p)); 2 Norton Bankr.L. & Prac.2d § 46:4 (2006). In this case, the result of applying section 522(p) separately to each debtor is to limit the homestead exemption for each to a separate $125,000 for a total exemption for the joint debtors in the amount of $250,000.

## C. Appreciation Does Not Count Toward the $125,000 Cap

The Trustee contends that the interest in the Homestead that the Debtors acquired during the 1,215–days prior to the petition includes appreciation. Consideration of this argument requires an interpretation of the wording of the following phrase found in section 522(p)(1): " . . . a

---

3. Alaska Stat. § 09.38.010; Ariz.Rev.Stat. Ann. § 33–1101(B); Cal.Civ.Proc.Code § 703.110(a); Haw.Rev.Stat. § 651–92(a)(2); Ky.Rev.Stat. Ann. § 132.810(2)(e); Mass. Gen. Laws ch. 188, § 1; Minn. Stat § 510.02; Mo.Rev.Stat. § 513.475(1); Mont.Code. Ann. §§ 70–32–103, 70–32–104; R.I. Gen. Laws § 9–26–4.1(b); Wis. Stat. § 815.20(1).

4. *Joe T. Dehmer Distributors, Inc. v. Temple,* 826 F.2d 1463, 1469 (5th Cir.1987) (applying Mississippi law); *In re Lindstrom,* 331 B.R. 267, 271 (Bankr.E.D.Mich.2005) (Michigan law); *In re Foulk,* 134 B.R. 929, 930–931 (Bankr.D.Neb.1991) (Nebraska law); *In re Lenox,* 58 B.R. 104, 106 (Bankr.D.Nev.1986) (Nevada law); *In re Reisnour,* 56 B.R. 225, 227 (D.N.D.1985) (North Dakota law); *D'Avignon v. Palmisano,* 34 B.R. 796 (D.Vt. 1982) (Vermont law).

debtor may not exempt *any amount of interest* that was *acquired by the debtor* during 1,215–day period ... that exceeds in the *aggregate $125,000 in value ...*" (emphasis added). For purposes of analysis, the sentence can be divided into three component parts:

(1) "any amount of interest,"

(2) "acquired by the debtor," and

(3) "aggregate $125,000 in value."

▮▮▮ Recent decisions interpreting section 522(p) appear to define "interest" as the fee simple interest acquired by the debtor upon purchase of the home. *In re Sainlar,* 344 B.R. 669, 672 (Bankr. M.D.Fla.2006); *In re Blair,* 334 B.R. 374, 376 (Bankr.N.D.Tex.2005). Both of these cases dealt with homesteads acquired before the 1,215–day period and both concluded that an increase in value due to appreciation during the 1,215–day period was not an interest acquired within the meaning of section 522(p). This Court is in agreement with the ultimate holdings in both these cases. However, the Court does not agree that the "interest" that is acquired by a debtor is ownership interest in the homestead. Rather, for the reasons discussed below, the Court concludes that the term "interest" means equity in the homestead acquired by a debtor during the 1,215–day period.

This conclusion is buttressed by the use of the same phrase "any amount of interest" immediately after section 522(p)(1) in section 522(p)(2)(B): "For purposes of paragraph (1), *any amount of such interest* does not include any interest transferred from a debtor's previous principal residence ... into the debtor's current principal residence...." 11 U.S.C. § 522(p)(2)(B)(emphasis added). This second use of the term "interest" can only refer to the equity in the prior residence that is rolled into the current homestead. *See Blair,* 334 B.R. at 377 ("[e]ssentially,

[section 522(p)(2)(B)] allows for rollover by debtors of equity in one home to another home located in the same state"); *see also In re Summers,* 344 B.R. 108, 113 (Bankr. D.Ariz.2006) (allowing debtors to claim "rolled over equity" from previous Arizona homestead); *In re Wayrynen,* 332 B.R. at 486 (same). Thus, it is clear that section 522(p)(2)(B) defines "interest" through usage to mean the debtor's equity in the property—not the debtor's fee simple interest. While one may roll equity from one property to another, one does not roll a fee simple property ownership interest from one property to another.

▮▮▮ Moreover, a common rule of statutory construction is that a single definition of common words must be used in the same section of the same enactment. *Union Bank v. Wolas,* 502 U.S. 151, 163, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991) (Scalia concurring); *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 283, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). Given this rule of statutory construction, the Court must conclude that "amount of interest" in section 522(p)(1) means amount of equity in the homestead just as it means equity in a prior homestead when referenced in section 522(p)(2).

▮▮▮ This interpretation also makes sense in light of the term "interest" being used in conjunction with "amount." Amount is a quantitative term. A homeowner may be thought of as having an amount of equity in a home. It would be unusual to refer to a homeowner having an amount of fee simple ownership in a home. In this regard, statutes should be "read in a 'straightforward' and 'commonsense' manner...." *Andersson v. Sec. Fed. Sav. & Loan of Cleveland (In re Andersson),* 209 B.R. 76, 78 (6th Cir. BAP 1997) (citing *Rogers v. Laurain (In re Laurain),* 113 F.3d 595 (6th Cir.1997)).

We next turn to the interpretation of the term, "acquired by the debtor." As stated in *Sainlar*, "[t]he plain import of the word [acquired] is 'obtained as one's own.'" *Sainlar*, 344 B.R. at 672–673. In this regard, a debtor may acquire or obtain equity either by making a down payment, by paying down the mortgage, or by appreciation due to market conditions. The first two methods of acquiring equity require active conduct on the part of the debtor—payment of money. The third, appreciation, is passive, requiring no active conduct.

This presents a question of grammatical construction. From the standpoint of statutory language, it would have been sufficient for capturing all methods of acquisition, active or passive, if the statute had provided "any amount of interest that was acquired during the 1215–period...." This presents the question of the effect to be given by the addition of the phrase "by the debtor" after and modifying "acquired."

 Courts generally disfavor interpretations that render language superfluous. *U.S. v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir.1999). Therefore, the addition of "by the debtor" must qualify "acquired" in some manner if it is not to be considered mere surplusage. As a matter of grammatical construction, "by the debtor" is a restrictive clause. John C. Hodges & Mary E. Whitten, Harbrace College Handbook 138, 553 (Harcourt Brace Jovanovich, Inc. 9th ed.1982). Restrictive clauses and phrases follow and limit the words they modify. They are essential to the meaning of the main clause. *Id.* It appears, therefore, that in this context, the addition of the clause "by the debtor" after "acquires" implies more than a passive acquisition—such as by appreciation; it implies an active acquisition of equity such as by an affirmative act of a down payment or mortgage pay down.

 Finally, we have the phrase "aggregate of $125,000 in value." Use of the phrase "in the aggregate" implies that successive acquisitions of equity by the debtor are to be aggregated. If the aggregate amount of these acquisitions during the 1,215–day period exceeds in value $125,000, the excess will not be exempt. For example, if a debtor within the 1,215–day period purchased a home for $750,000, paying $100,000 down and financing the balance by a bank mortgage and then a month after the purchase paid off the $650,000 mortgage, the amount of equity acquired by the debtor's affirmative acts of paying $100,000 down at the time of purchase and then paying off the $650,000 mortgage would be aggregated. In this example, the debtor's permitted exemption of $125,000 will have been exceeded by $625,000.[5]

 In this case, the "amount of interest that was acquired" by the Debtors was equity resulting from the rollover of equity derived from the sale of the prior homestead of approximately $35,000 and cash of approximately $1,800 paid at closing of the sale. While appreciation did

---

**5.** This interpretation of the applicability of section 522(p) would also result in monthly principal amortization constituting the acquisition of equity within the 1,215–day period and counting against the permitted $125,000 exemption for an individual debtor. However, this in itself will rarely if ever be sufficiently significant in amount to exceed the cap. The Court takes judicial notice of the fact that in order for a conventional 30–year mortgage at an interest rate of 7 percent to exceed a principal pay down of more than $125,000 over a 1,215–day period, the principal amount of the mortgage would have to be approximately $3,400,000, requiring payments of over $22,000 per month. Such a case would no doubt raise other issues—such as the debtor's bad faith under section 707(b)(3).

occur, it did not occur due to any act of the Debtors and accordingly it is not an interest "acquired *by the debtor*" during the 1,215–day period. The fact that the Homestead may have appreciated substantially in value during the 1,215–day period does not constitute the acquisition of an interest in the Debtors' homestead for purposes of section 522(p).

■ This conclusion is consistent with the legislative history of section 522(p).[6] In this regard, the legislative history contains no suggestion that a debtor's passive acquisition of appreciation by a debtor within the 1,215–day period was intended to be capped by section 522(p). Rather, the House Report accompanying BAPCPA refers to the problem of debtors who relocate to states such as Florida to take advantage of the "mansion loophole." H.R.Rep. No. 109–31 pt. I 109th Cong., 1st Sess., 15–16 (2005), U.S.Code Cong. & Admin.News 2005, pp, 88, 102. Or, as summarized in the Congressional Record,

> "[u]nder current law, a wealthy individual in a State such as Florida … can go out … and invest that money in … a huge house, file for bankruptcy, and basically protect all of their assets…. With the legislation we have before us, someone has to figure out that 2 1/2 years ahead of time people are going to want to file for bankruptcy and be smart enough to put the money into a home …."

151 Cong. Rec. S2415–02 (2005). Passive appreciation in a homestead was not the target of the legislation; rather, the active acquisition of equity in an exempt homestead shortly before filing for bankruptcy was the focus of the new provision.

## V. *Conclusion*

In this case, the Trustee has objected to the Debtors' claim of exemptions because the amount of appreciation that has occurred since the purchase of the Homestead less than 1,215 days before the petition exceeds $125,000. For the reasons set forth above, the Court concludes that as a result of the application of section 522(m) to new section 522(p), each Debtor in this joint case may separately claim $125,000 of the Homestead for a total exemption in their joint case of $250,000. In addition, to the extent that equity in the Homestead at the time of the petition resulted from appreciation, such appreciation does not constitute an interest acquired by the Debtors within the meaning of section 522(p). Because the Debtors' equity in their Homestead was less than $250,000, and because the Objection is premised on an interpretation of section 522(p) that would include appreciation as part of the equity, the Trustee's objection is overruled.

Accordingly, it is

ORDERED that the Trustee's objection to the Debtors' claim of exemption as to their Homestead is overruled.

DONE and ORDERED.

---

**6.** While, as a general proposition, a court should not resort to legislative history when statutory text is clear, when a statute is vague or ambiguous an examination of the act's purpose and of its legislative history is appropriate. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226 (11th Cir.2004), *U.S. v. Pringle*, 350 F.3d 1172, 1180 n. 11 (11th Cir.2003). Here, there may be some ambiguity in the statute—as the terms can be read as this Court has done or as interpreted by *Blair* and *Sainlar*. *In re Blair*, 334 B.R. 374, 376 (Bankr.N.D.Tex.2005); *In re Sainlar*, 344 B.R. 669, 672 (Bankr.M.D.Fla.2006).