IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2008

Charles R. Fulbruge III
Clerk

No. 06-11263

In the matter of:  SARAH K ROGERS

Debtor

-------------------------------------------------------------------------

JACK C WALLACE

Appellant

v.

SARAH K ROGERS

Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-619

Before DeMOSS, DENNIS, and OWEN, Circuit Judges.

DeMOSS, Circuit Judge:

This case involves a question of first impression in this circuit: the statutory interpretation of the newly enacted homestead exemption cap, 11 U.S.C. § 522(p)(1), found in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  The issue is whether the homestead exemption cap applies to a homestead interest established within the 1,215-day period preceding the filing of the bankruptcy petition despite the fact that the

debtor acquired title to the property before that statutory period. The bankruptcy court answered this question in the negative, and the district court affirmed. For the reasons discussed below, we affirm.

## I. Factual & Procedural Background

On January 17, 1994, the Appellee, Sarah K. Rogers ("Rogers" or "debtor"), inherited a 72.5 acre tract of real property known as 14849 Kelly Road, Forney, Texas ("Forney Property"). Rogers was single when she inherited the Forney Property from her mother. Subsequently, Rogers married George E. Rogers, and they purchased a 5.1 acre tract of real property known as 8644 South F.M. 549, Rockwall, Texas ("Rockwall Property"). Rogers and her husband constructed a residence on the Rockwall Property and claimed it as their homestead. In January 2004, Rogers separated from her husband, moved into a mobile home on the Forney Property, and claimed the Forney Property as her homestead. On April 6, 2004, Rogers and her husband divorced. Pursuant to the divorce decree, Rogers was divested of all right, title and interest in the Rockwall Property, and no equity from the Rockwall Property was rolled-over into the Forney Property. The divorce decree awarded the Forney Property to Rogers, but this award simply affirmed the reality that the Forney Property was her separate property because she inherited it from her mother before marriage.

Prior to 2004, Rogers and her husband had borrowed money from the Appellant, Jack C. Wallace, to embark on an ultimately unsuccessful business venture. Wallace eventually sued to recover the unpaid loan balance, and on April 19, 2004, he obtained a state-court judgment against both the debtor and her then ex-husband, for the total principal amount of $316,180.95, in addition to court costs and post-judgment interest.

On September 28, 2005, the debtor filed for relief under Chapter 7 of the Bankruptcy Code. The debtor elected state law exemptions in accordance with the provisions of 11 U.S.C. § 522(b). In her Schedule C, the debtor claimed her

homestead exemption on the Forney Property in the amount of $359,000. Wallace filed a timely objection to the debtor's claimed homestead exemption, arguing that 11 U.S.C. § 522(p)(1) capped the debtor's homestead exemption at the federal statutory amount of $125,000 because the debtor acquired her homestead interest in the Forney Property within the 1,215-day period preceding the filing of her bankruptcy petition.

The bankruptcy court orally denied Wallace's objection at a hearing held on January 18, 2006, and this ruling was memorialized by written order dated February 7, 2006. On October 16, 2006, the district court affirmed the bankruptcy court's order overruling Wallace's objection to the claimed homestead exemption. Wallace then perfected this timely appeal.

## II. Analysis

### A. Standard of Review

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. "We review the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law as the district court applied." Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.), 258 F.3d 385, 387 (5th Cir. 2001). The bankruptcy court's findings of fact are subject to clearly erroneous review, while its conclusions of law are reviewed de novo. Id.

### B. The debtor is entitled to her full homestead exemption.

#### 1. 11 U.S.C. § 522(p)(1)

The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); Owen v. Owen, 500 U.S. 305, 308 (1991). Rogers elected to exempt the Forney Property as her homestead under Texas state law. See 11 U.S.C. § 522(b); see also TEX. CONST. art. XVI, § 50; see also TEX. PROP. CODE §§ 41.001–.002. "'An exemption is an interest withdrawn from the estate (and

hence from the creditors) for the benefit of the debtor.'"  Norris v. Thomas (In re Norris), 413 F.3d 526, 527 (5th Cir. 2005) (quoting Owen, 500 U.S. at 308).

Enacted as part of BAPCPA, 11 U.S.C. § 522(p)(1) limits the state law homestead exemption under certain circumstances.[1]  Section 522(p)(1) prevents the debtor from exempting certain interests from the bankruptcy estate if they were acquired by the debtor during the statutory period and their aggregate value exceeds a certain dollar threshold.   The statute reads, in relevant part:

> [A]s a result of electing . . . to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate [$125,000][2] in value in—real or personal property that the debtor or dependent of the debtor claims as a homestead.

11 U.S.C. § 522(p)(1)(D).  The statute further states that "any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State." Id. § 522(p)(2)(B).

2.      The bankruptcy court held that the term "interest" refers to title, and the district court held that the term "interest" refers to equity.

Both the bankruptcy court and the district court held that Rogers was entitled to her homestead exemption, but they gave different reasons for this holding.   The bankruptcy court predominantly focused on construing the relationship between different phrases in § 522(p)(1)(D) while the district court

---

[1] Unlike most other provisions of the statute, 11 U.S.C. § 522(p) became effective immediately upon enactment of BAPCPA on April 20, 2005.   See Pub. L. No. 109-8, § 1501(b)(2), 119 Stat. 23, 216 (2005).

[2] In 2007, the Judicial Conference of the United States adjusted the dollar amount from $125,000 to $136,875.  See 72 Fed. Reg. 7082-01 (Feb. 14, 2007); 11 U.S.C. § 104(b).  At the time the bankruptcy petition was filed in this case, the relevant dollar amount was $125,000.

focused on interpreting the meaning of the term "interest." Ultimately, the two courts interpreted the term "interest" differently: the bankruptcy court interpreted it to mean an unquantifiable "property interest," which presumably refers to title or fee ownership, and the district court interpreted it to mean "some legal or equitable interest that can be quantified by a monetary figure," which presumably refers to equity. Both courts reached the same conclusion regarding the applicability of § 522(p)(1)(D) because a homestead interest is not the equivalent of title or equity.

The bankruptcy court construed § 522(p)(1) to mean that a debtor "can't exempt any amount in excess of $125,000 if an interest in property was acquired by the debtor during the 1,215 day period preceding the date of the filing of the petition." Thus, the bankruptcy court concluded that the phrase "any amount" modifies the phrase "that exceeds in the aggregate $125,000." In the words of the bankruptcy court, "it's got to be the interest that's acquired, not an amount of interest." The bankruptcy court concluded that § 522(p)(1) was inapplicable because Rogers acquired her "property interest" in the Forney Property in 1994, which was outside the statutory period.

Although the Texas Supreme Court has characterized the homestead interest as a "legal interest" created by the Texas Constitution, the bankruptcy court held that this "legal interest" was not the type of "property interest" covered by § 522(p)(1). Although it did not further define the term "property interest," the bankruptcy court's conclusion that the phrase "any amount" does not modify the term "interest" strongly suggests that it equated acquiring a "property interest" with acquiring title to the property. Furthermore, the only case cited by the bankruptcy court at the hearing held that the term "interest" refers to title, not equity. See In re Blair, 334 B.R. 374, 376 (Bankr. N.D. Tex. 2005).

Based on the legislative history, the bankruptcy court concluded that the purpose of the statute was to close the "mansion loophole" and prevent debtors from moving to states with more generous homestead exemptions on the eve of bankruptcy in order to avail themselves of those exemptions. After observing that Rogers did not move to Texas in anticipation of bankruptcy and that her homestead designation of the Forney Property was precipitated by divorce, the bankruptcy judge overruled Wallace's objection and held that Rogers may exempt the entirety of her homestead from the bankruptcy estate.

On appeal, the district court affirmed the bankruptcy court's order. Wallace v. Rogers (In re Rogers), 354 B.R. 792, 798 (N.D. Tex. 2006). Unlike the bankruptcy court, the district court assumed that the phrase "any amount" modifies the term "interest," so the issue was whether "the characterization of real property as a homestead qualif[ies] as an 'interest' within the phrase 'debtor may not exempt any amount of interest.'" Id. at 795. The district court held that the statutory language of § 522(p)(1) was unambiguous and that the term "'interest' refers to some legal or equitable interest that can be quantified by a monetary figure." Id. at 796. In support of its holding that "interest" refers to a quantitative measure, the district court observed that (1) the term "interest" is modified by the term "amount," which is a quantitative term; (2) the statute mandates that the "amount of interest" may not exceed in the aggregate a specified dollar amount; and (3) § 522(p)(2)(B) allows for transfer of any amount of interest from the debtor's previous principal residence that was acquired before the statutory period. Id. at 796-97. Regarding this third point, the district court noted that both § 522(p)(1) and § 522(p)(2)(B) used the term "interest," and it reasoned that only equity, which has a quantitative value, can be rolled-over into a new property, not a homestead interest. Id. at 797.

The district court observed that it is impossible "to have a 'quantity' of classification as homestead." Id. The district court disagreed with the

bankruptcy court's analysis in In re Greene, 346 B.R. 835, 843 (Bankr. D. Nev. 2006), which held that § 522(p)(1) applied to a homestead interest established within the statutory period despite the fact that the debtor acquired title to the property outside that period. Rogers, 354 B.R. at 797. The district court criticized the Greene court for ignoring statutory language indicating that the term "interest" refers to a quantitative measure. Id. The district court cited approvingly to the bankruptcy court's analysis in In re Rasmussen, 349 B.R. 747, 758 (Bankr. M.D. Fla. 2006), which held that the term "interest" referred to equity in the property, not an ownership interest equivalent to a fee simple. Rogers, 354 B.R. at 798. The district court refused to consider the legislative history of § 522(p)(1) because it concluded that the statute was unambiguous, and it declined to address the meaning of the term "acquired" because its interpretation of the term "interest" was dispositive of the appeal. Id. Thus, the district court affirmed the bankruptcy court, holding that "the term 'interest' does not encompass the classification of real property as a homestead." Id.

      3.    Three other bankruptcy courts have addressed this same legal issue.

Two bankruptcy courts have held that § 522(p)(1) does not apply to a homestead interest established within the 1,215-day period if the debtor acquired title the property before that period. See In re Lyons, 355 B.R. 387, 390-91 (Bankr. D. Mass. 2006); see also Venn v. Reinhard (In re Reinhard), 377 B.R. 315, 321 (Bankr. N.D. Fla. 2007). One bankruptcy court has held to the contrary. See In re Greene, 346 B.R. 835, 843 (Bankr. D. Nev. 2006).[3]

In Lyons, the debtor purchased the property on April 26, 1977 and recorded a homestead declaration on August 12, 2004. 355 B.R. at 389. Two weeks after the debtor recorded the homestead designation, a creditor was

---

[3] The bankruptcy court decision in Greene was affirmed by the district court in an unpublished opinion, and the case is currently on appeal before the Ninth Circuit.

granted an attachment on the property in the amount of $50,000. Id. Regarding the applicability of § 522(p)(1)(D), the Lyons court held the following:

> The plain language of Section 522(p) indicates that the debtor must have acquired an interest in the property within 1,215 days of filing. The term "interest" refers to some quantitative amount of legal or equitable value. See In re Rogers, 354 B.R. 792, 796 (N.D. Tex. 2006) (discussing at length the statutory construction of Section 522(p)). The homestead is not a quantifiable interest; it is a classification of property under state law. Id. Here, the Debtor did not acquire his interest in the Property within 1,215 days; rather, the Property "acquired" its classification as a homestead during that time. Thus, the Court finds that [Section 522(p)(1)(D)] do[es] not apply and that Debtor is entitled to the $500,000.00 homestead exemption under Massachusetts law.

355 B.R. at 390-91. Thus, the Lyons court adopted the reasoning of the district court in this case.

In Reinhard, the debtor and his wife ("the Reinhards") acquired title to a Florida property (the "Seaside Property") on February 24, 1995. 377 B.R. at 317. However, they resided in a different Florida property (the "Tallahassee Property") until June 30, 2005. Id. During the 1,215-day period before they filed for bankruptcy, the Reinhards moved into the Seaside Property and designated it as their homestead under Florida law. Id. No equity was transferred from the Tallahassee Property to the Seaside Property. Id. The Reinhards filed for bankruptcy on November 3, 2006. Id. According to the Reinhard court, the issue was whether "the Debtor acquired any amount of interest in value in the Seaside Property when it acquired homestead status under Florida law." Id.

The Reinhard court asserted that the acquisition of an interest in property and the acquisition of homestead status are distinct concepts because homestead status attaches to protect the property after it is acquired by the debtor. Id. at 319. The Reinhard court stated the following:

> Homestead is simply a status, constitutionally defined, which exempts certain property from execution and limits its alienability. It is not a property interest. When a Florida resident's property acquires homestead status, the owner does not acquire any of the rights traditionally associated with property interests: the right to possession, the right to use, the right to transfer—the owner already holds whatever of these he has. Accordingly, homestead status in Florida is not properly conceptualized as a stick in the bundle; rather, it is a protective safe in which the bundle is put.

Id. Thus, the Reinhard court concurred with the conclusion of Rogers and Lyons that a homestead is a classification of property, not a "property interest" that implicates § 522(p)(1).

Relying in part on the district court's opinion in this case, the Reinhard court held that the term "interest" refers to "a quantitative or monetary value in property." Id. at 320. The Reinhard court further elaborated on this concept when it stated that "the debtor must acquire some amount of interest in the value of one of the four types of property listed during the 1215-day period in order for the cap to apply." Id. According to the Reinhard court, § 522(p)(1) refers to the acquisition of monetary value in property, not in an exemption. Id. The debtor does not acquire additional monetary value in the property when she designates it as her homestead; rather, the designation merely protects the existing monetary value that the debtor acquired in the property before filing for bankruptcy. See id. at 321 ("Homestead status simply exempts the homesteader's existing share in the property from forced sale and limits its alienability. Therefore, the Debtor did not acquire any amount of interest in value in the Seaside Property when it acquired homestead status.").

To date, only one bankruptcy court has reached a conclusion contrary to that of Rogers, Lyons, and Reinhard. In Greene, the debtor purchased a 67-acre parcel of undeveloped land (the "Sparks Property") in May 1994. 346 B.R. at 838. The debtor admitted that he lived with his girlfriend at another location

until early August 2004. Id. On August 10, 2004, the debtor moved a travel trailer onto the property, and on August 11, 2004, the debtor designated the property and the travel trailer as his homestead. Id. The debtor filed his Chapter 13 petition just 16 days later, on August 27, 2004. Id. After the debtor voluntarily dismissed his Chapter 13 petition, the debtor filed his Chapter 7 petition on October 15, 2005. Id. A creditor filed a timely objection to the debtor's claimed homestead exemption, arguing that the exempted amount must be reduced from $350,000 to $125,000 pursuant to § 522(p)(1) because the homestead was an interest acquired within 1,215 days of the filing of the petition.[4] Id.

In Greene, the debtor argued that § 522(p)(1) does not apply because he purchased the property more than 1,215 days before he filed the petition. Id. at 840. In rejecting this argument, the Greene court stated that the homestead exemption is a "property interest" that "lies dormant and inactive until it is acquired by the debtor." Id. at 842. In the words of the Greene court, "[w]hat must be acquired during the 1,215 day period is the homestead exemption, not the real property. These are separate interests." Id. at 842-43. Although the Greene court recognized that the debtor's interest in the property includes title to the property, it insisted that the term "interest" refers to a broader concept. See id. at 843 ("Whatever Debtor had in his bundle of rights and interests pertaining to the Property, homestead protection was not one of them."). Thus, the Greene court concluded that the debtor's homestead interest "is a property interest acquired within 1,215 days of his bankruptcy petition and is limited to $125,000 pursuant to Section 522(p)." Id.

---

[4] In Nevada, the homestead exemption extends to the claimant's equity in the homestead property up to a maximum of $350,000. NEV. REV. STAT. § 115.010(2).

10

> 4. Other courts have addressed the meaning of the term "interest" in cases involving different facts.

For purposes of § 522(p)(1), other courts have generally defined "interest" as either title[5] or equity.[6] Those courts adopting the equity definition have been forced to address complex issues regarding passive and active equity appreciation during the 1,215-day period. See In re Rasmussen, 349 B.R. at 757-58 (distinguishing between active equity appreciation, which is subject to the cap, and passive equity appreciation, which is not); see In re Chouinard, 358 B.R. at 815 (holding that "passive market appreciation" resulting in increased equity is not an interest that a debtor "acquires" during the statutory period). In contrast, those courts adopting the title definition have crafted an easily-applied

---

[5] See In re Anderson, 374 B.R. 848, 859 (Bankr. D. Kan. 2007) (holding that the phrase "interest that was acquired" should be construed as "applying to the actual purchase or acquisition of an ownership or fee interest in the homestead property"); see In re Sainlar, 344 B.R. 669, 673 (Bankr. M.D. Fla. 2006) ("The phrase 'interest that was acquired' as used in § 522(p)(1) means the acquisition of ownership of real property. Section 522(p), therefore, does not apply to property to which a debtor acquired title more than 1,215 days before a bankruptcy filing."); see In re Blair, 334 B.R. 374, 376-77 (Bankr. N.D. Tex. 2005) (holding that § 522(p)(1) was inapplicable because the debtors "acquired title and fee to their home" before the statutory period); see Khan v. Bankowski (In re Khan), 375 B.R. 5, 13-14 (B.A.P. 1st Cir. 2007) (holding that § 522(p)(1) applied because legal title to the property was transferred from a trust to the debtor within the statutory period); see also 4 COLLIER ON BANKRUPTCY ¶ 522.13[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007) ("[T]he phrase ["interest that was acquired"] should be construed as applying to the actual purchase or acquisition of an ownership or fee interest in the homestead property.")

[6] See In re Rasmussen, 349 B.R. 747, 756 (Bankr. M.D. Fla. 2006) (concluding that the term "interest" means "equity in the homestead acquired by a debtor during the 1,215-day period," not title or a fee simple ownership interest); see In re Chouinard, 358 B.R. 814, 815 (Bankr. M.D. Fla. 2006) (concurring with the Rasmussen court's holding that the term "interest" refers to equity); see In re Rogers, 354 B.R. at 798 (holding that interest refers to some legal or equitable interest that can be quantified by a monetary figure and stating that "[t]he court finds In re Rasmussen to [be] a better reasoned interpretation of § 522(p)"); see In re Reinhard, 377 B.R. at 320 (citing Rogers, Lyons, and Rasmussen and holding that the term "interest" refers to "a quantitative or monetary value in property"); see In re Presto, 376 B.R. 554, 577 (Bankr. S.D. Tex. 2007) (adopting the Rogers interpretation of the term "interest"); see also Shaun Mulreed, Casenote, In re Blair Misses the Mark: An Alternative Interpretation of the BAPCPA's Homestead Exemption, 43 SAN DIEGO L. REV. 1071, 1087 (2006) (arguing that the phrase "interest that was acquired" should apply "to all equity acquired within the 1,215 days preceding the filing of a bankruptcy petition").

rule that is arguably in conflict with the statutory language indicating that the term "interest" refers to a quantitative or monetary value.[7] See In re Sainlar, 344 B.R. at 669 (holding that § 522(p)(1) "has no applicability to property in which a debtor obtained an ownership interest more than 1,215 days before the petition date, even if the property's equity increases [through market appreciation or principal debt reduction] during the 1,215-day pre-petition period"); see In re Blair, 334 B.R. at 375, 378 (same); see In re Anderson, 374 B.R. at 859-60 (same).

5.      A homestead interest is not the equivalent of title or equity.

We find it unnecessary at this time to pick a side in the title versus equity debate.  A homestead interest is not the equivalent of title or equity.  In this case, Rogers acquired title to the property when she inherited it from her mother in 1994, which was outside the statutory period.  Those courts adopting the title definition of "interest" would conclude that § 522(p)(1) is inapplicable to Rogers. See In re Anderson, 374 B.R. at 861.  Rogers acquired most of her equity in the Forney Property at the time she inherited it in 1994.  Those courts adopting the equity definition of "interest" would also conclude that § 522(p)(1) is inapplicable to Rogers.[8]  She did not actively acquire equity through making a down payment

---

[7] Those courts and commentators adopting the title definition of "interest" have indicated that creditors could challenge fraudulent mortgage payments or capital improvements made during the statutory period through another BAPCPA provision, 11 U.S.C. § 522(o).  See In re Anderson, 374 B.R. at 858 ("The Court concludes that accumulation of equity by early payoff or substantially paying down the mortgage against the homestead property, such as debtor's $240,000 one-time lump sum payment during the 1,215 day period here, may be subject to challenge under § 522(o)."); see also 4 COLLIER ON BANKRUPTCY ¶ 522.13[2] (same).  Unlike §522(p)(1), §522(o) requires proof of "intent to hinder, delay, or defraud a creditor."  See In re Anderson, 374 B.R. at 859-60.

[8] The date of acquisition of title is irrelevant for purposes of the equity definition; however, if title is acquired during the statutory period, any lump-sum down payment made in connection with closing (i.e. the date of  acquisition of title) would apply towards the $125,000 equity cap.  In this case, Rogers inherited the Forney Property in 1994, so she did not make a down payment during the statutory period that would apply towards the cap.

or monthly mortgage payments on the Forney Property during the statutory period. See In re Rasmussen, 349 B.R. at 757. Rogers made capital improvements to the Forney Property by spending less than $100,000 of her retirement money to construct a permanent residence, but the aggregate value of those improvements did not exceed $125,000. Rogers presumably benefitted from market appreciation during the statutory period; however, those courts adopting the equity definition of "interest" have concluded that passive equity appreciation is not "acquired" by the debtor and not covered by § 522(p)(1). Id. at 757-58.

Wallace argues that Rogers acquired an interest in the Forney Property during the 1,215-day period because the divorce decree divested the debtor's husband of "all right, title, interest, and claim" in the Forney Property and awarded it to the debtor. Recently, a bankruptcy court addressed the issue of whether acquiring an ex-spouse's community property interest in the homestead property is a form of active equity appreciation that is subject to § 522(p)(1). If the Forney Property had constituted the community property of the debtor and her husband, then Wallace's argument might have some merit. See In re Presto, 376 B.R. at 576. However, the Forney Property was the debtor's separate property because she inherited it from her mother before marriage. See TEX. FAM. CODE § 3.001. A trial court in Texas has no discretion to divest title to separate property and award that property to the other spouse in a divorce. Cameron v. Cameron, 641 S.W.2d 210, 219-20 (Tex. 1982). In this case, the divorce decree did not increase Rogers's equity share in the Forney Property because she owned it as her separate property. Rogers did not acquire "new value in a homestead through a divorce decree." See In re Presto, 376 B.R. at 580.

6. A homestead interest is not covered by § 522(p)(1) because it does not constitute a vested economic interest in property.

Wallace does not appear to quarrel with the proposition that the debtor's acquisition of title or equity during the 1,215-day period can implicate the homestead exemption cap. He is simply advocating a more expansive definition of "interest" that includes a "homestead interest." Although other courts have interpreted the term "interest" more narrowly, we must determine whether the term refers to a broader concept that includes a homestead interest.[9] "The answer to this federal question, however, largely depends upon state law." United States v. Craft, 535 U.S. 274, 278 (2002). Thus, we look initially to state law to determine what rights the debtor had in the Forney Property pursuant to Texas homestead law, then to federal law to determine whether the debtor's "state-delineated rights" qualify as an "interest" within the compass of the homestead exemption cap. Id. In Craft, which addressed whether property held as a tenant by the entirety constituted "property and rights to property" for purposes of the federal tax lien statute, the Supreme Court stated the following:

> A common idiom describes property as a "bundle of sticks"—a collection of individual rights which, in certain combinations, constitute property. State law determines only which sticks are in a person's bundle. Whether those sticks qualify as "property" for purposes of the federal tax lien statute is a question of federal law. In looking to state law, we must be careful to consider the substance

---

[9] We note the distinction between a homestead interest and a homestead designation. "To establish homestead rights, the claimant must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead." Dominguez v. Castaneda, 163 S.W.3d 318, 330 (Tex. App.—El Paso 2005, pet. denied). Thus, a homestead interest is established when those two elements are satisfied. In contrast, a homestead designation refers to the ministerial act of recording a notice in the county deed records. TEX. PROP. CODE § 41.005; see id. at § 41.021 (allowing judgment debtors to record a homestead designation under § 41.005 after execution is issued). In this case, the debtor established her homestead rights and recorded her homestead designation within the statutory period. Cf. Laster v. First Huntsville Props. Co., 826 S.W.2d 125, 130-32 (Tex. 1991) (using the term "homestead right" and "homestead interest" interchangeably). If the debtor had established her homestead rights outside the statutory period and filed her homestead designation within the statutory period, then § 522(p)(1) would also be inapplicable. Even assuming that a homestead interest is "acquired" by the debtor, which we do not decide, we conclude that it is not the type of "interest" covered by § 522(p)(1).

> of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them. Such state law labels are irrelevant to the federal question of which bundles of rights constitute property that may be attached by a federal tax lien.

Id. at 278-79 (internal citations omitted). In Craft, the Supreme Court held that "the statutory language authorizing the tax lien is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." Id. at 283 (internal quotation marks omitted). Accordingly, the Supreme Court held that the husband's rights in the entireties property fall within this broad statutory language: "all property and rights to property." Id.; 26 U.S.C. § 6321. Based on the statutory language of 11 U.S.C. § 522(p)(1), we find that Congress did not intend the scope of the term "interest" to sweep so broadly.

Under Texas law, "[t]he homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but [a few] types of constitutionally permitted liens against homesteads. This interest . . . gives protective legal security rather than vested economic rights."[10] Heggen v. Pemelton, 836 S.W.2d 145, 148 (Tex. 1992). Although the Texas Supreme Court referred to the homestead interest as a "legal interest" in Heggen, we must look beyond that label and consider the substance of the right conferred by state law. See Craft, 535 U.S. at 279. Based on our review of the statutory language, we conclude that the term "interest" as used in § 522(p)(1) refers to vested economic interests that the debtor acquires in the homestead property during the 1,215-day period preceding the filing of the petition. Thus, a homestead interest

---

[10] "Homesteads are protected from forced sale for the payment of debts, except for those debts specifically enumerated in the constitution, including debts incurred for purchase money on the homestead, taxes thereon, work or services performed thereon, certain extensions of credit, and certain reverse mortgages." Florey v. Estate of McConnell, 212 S.W.3d 439, 443 (Tex. App.—Austin 2006, no pet.).

established within the statutory period, without more, does not fall within the purview of § 522(p)(1).

Unlike a homestead interest, title and equity both constitute vested economic interests in the homestead property that can be acquired during the 1,215-day period preceding the filing of the petition. These interests are vested because they have an ascertainable economic value at the moment they are acquired by the debtor. In contrast, for purposes of federal bankruptcy law, the homestead exemption is valueless until it is claimed in bankruptcy, such that any value attributable to the exemption is not realized by the debtor until after the filing of the petition. Wallace essentially argues that "interest" refers to all rights that enhance a debtor's claimed exemption on Schedule C. However, we believe that "interest" refers to property interests acquired within the statutory period that the debtor "may not exempt" from the bankruptcy estate. "Value" as used in § 522(p)(1) refers to the economic value of the property interests acquired within the statutory period, not the value of the exemption claimed by the debtor.

Although we decline to address whether the equity definition of "interest" is correct, we concur with the Reinhard court's conclusion that the debtor must acquire vested economic interests in the homestead property during the 1,215-day period. A debtor acquires an interest in property, not in an exemption. See Owen, 500 U.S. at 311 n.4 ("[T]here would be no debtor's interest in the property to which a[n] . . . exemption could attach."). "A fundamental canon of statutory construction instructs that in the absence of a statutory definition, we give terms their ordinary meaning." Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 391 (5th Cir. 2002). BLACK'S LAW DICTIONARY 828 (8th ed. 2005) defines "interest" as "a legal share in something; all or part of a legal or equitable claim to or right in property <right, title, and interest>." Similarly, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1178 (1971) defines "interest" as "right, title,

or legal share in something" and "something in which one has a share of ownership or control." These definitions clearly indicate that one has "interests" in the property itself, not in the exemption that protects those interests.

For purposes of federal bankruptcy law, the homestead exemption is not a separate interest, but rather the status of a withdrawn interest in property that was acquired prior to bankruptcy. See Norris v. Thomas, 215 S.W.3d 851, 856 (Tex. 2007) ("[W]e agree that the proper test for whether a residence attains homestead status . . . ."); see also Owen, 500 U.S. at 308 ("An exemption is an interest withdrawn from the estate"). The homestead interest simply gives "protective legal security" to those vested economic interests in property that were acquired by the debtor before the filing of the petition. Heggen, 836 S.W.2d at 148; see Laster, 826 S.W.2d at 131 ("[The party's] homestead interest protects the portion of the property that she owns.").

Our own precedent has recognized that a homestead interest is a legal right vested in the individual to attach an exempt status to existing property interests. See Perry v. Dearing (In re Perry), 345 F.3d 303, 314-15 (5th Cir. 2003) ("According to the Texas Supreme Court, it is a well-recognized principle of law that one's homestead right in property can never rise any higher than the right, title, or interest that he owns in the property attempted to be impressed with a homestead right.") (internal quotation marks and ellipsis omitted) (emphasis added). The homestead exemption and the property interest impressed with that exemption are discrete concepts: the former is the debtor's legal right to exempt certain property interests from the bankruptcy estate, the latter is the debtor's vested economic interests in the property itself.

Although the Texas Supreme Court has characterized the homestead interest as "an estate in land" that is "analogous to a life tenancy," this language merely describes the scope of the protective legal security afforded by the homestead interest. See Laster, 826 S.W.2d at 129-31 (discussing the analogy

17

and concluding that one spouse's homestead designation did not affect "any property interest protected by [the other spouse's] homestead right.") (emphasis added). The homestead interest does not increase the vested economic interests that the debtor holds in the homestead property; rather, it simply protects those vested economic interests in the property that the debtor acquired before the filing of the petition.

Thus, we find that the Greene court construed the scope of the term "interest" too broadly. What must be acquired during the statutory period is vested economic interests in the homestead property.

7. Other sections of 11 U.S.C. § 522 indicate that the term "interest" refers to a vested economic interest in property.

"The starting point in discerning congressional intent is the existing statutory text." Lamie v. United States Trustee, 540 U.S. 526, 534 (2004). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Id. (internal quotation marks omitted). Only after application of the principles of statutory construction, including the canons of construction, and after a conclusion that the statute is ambiguous may the court turn to the legislative history. Carrieri v. Jobs.com, Inc., 393 F.3d 508, 518-19 (5th Cir. 2004). For the language to be considered ambiguous, however, it must be susceptible to more than one reasonable interpretation or more than one accepted meaning. Id. at 519. However, a statute is not ambiguous simply because it is inartfully drafted. See Lamie, 540 U.S. at 534 ("The statute is awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue.").

The statute is not ambiguous as to whether a homestead interest is covered by § 522(p)(1). The term "interest" is used in several sections of 11 U.S.C. § 522 and consistently refers to some vested economic interest in

18

property. For example, § 522(b)(3)(B), which addresses state exemptions, characterizes "an interest as a tenant by the entirety or joint tenant" as an "interest in property." Section 522(d)(1), which addresses federal exemptions, states that the debtor may exempt her "aggregate interest, not to exceed $20,200 in value, in real property . . . that the debtor . . . uses as a residence." Section 522(p)(2)(B) states that "any amount of interest" does not include any interest transferred from a debtor's previous principal residence that was acquired outside the statutory period. In contrast to "interests," which refer to vested economic interests in property, "exemptions" refer to those interests that are withdrawn from the estate. See 11 U.S.C. § 522(b)(1) ("[A]n individual debtor may exempt from property of the estate the property listed in either paragraph (2) [federal exemptions] or, in the alternative, paragraph (3) [state exemptions]."). Section 522(p)(1) prevents the debtor from withdrawing certain vested economic interests in property from the bankruptcy estate if they were acquired by the debtor during the statutory period and their aggregate value exceeds a certain dollar threshold.

8. The legislative history indicates that the term "interest" refers to a vested economic interest in property.

Even assuming that § 522(p)(1) is ambiguous, the legislative history makes clear that the term "interest" refers to some vested economic interest in property acquired during the statutory period, not a homestead interest. "Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005). The House Report specifically addressed the meaning of § 522(p):

> Sec. 322. Limitations on Homestead Exemption. Section 322(a) amends section 522 of the Bankruptcy Code to impose an aggregate monetary limitation of $125,000 . . . on the value of property that

> the debtor may claim as exempt under State or local law pursuant to section 522(b)(3)(A) under certain circumstances. The monetary cap applies if the debtor acquired such property within the 1,215-day period preceding the filing of the petition and the property consists of any of the following: (1) real or personal property of the debtor or that a dependent of the debtor uses as a residence . . . (4) real or personal property that the debtor or dependent of the debtor claims as a homestead . . . . In addition, the limitation does not apply to any interest transferred from a debtor's principal residence (which was acquired prior to the beginning of the specified time period) to the debtor's current principal residence, if both the previous and current residences are located in the same State.

H.R. Rep. No. 109-31(I) (2005), reprinted in 2005 U.S.C.C.A.N. 88, 148, 2005 WL 832198, *81. This piece of legislative history has been cited approvingly by those courts adopting the title definition of interest. See, e.g., In re Sainlar, at 344 B.R. at 673-74. The legislative history indicates that Congress was concerned with the acquisition of vested economic interests in property during the statutory period.

> On March 10, 2005, Senator Carper stated the following:

> Today, under current law, a wealthy individual in a State such as Florida or Texas can go out, if they are a millionaire, and take those millions of dollars and invest that money in real estate, a huge house, property, and land in the State, file for bankruptcy, and basically protect all of their assets which they own because of a provision in Florida and Texas law.

151 Cong. Rec. S2415-02 (daily ed. March 10, 2005), at *S2415-*S2416.

> With the legislation we have before us, someone has to figure out that 2 ½ years ahead of time people are going to want to file for bankruptcy and be smart enough to put the money into a home, or an estate, or into a trust—not something you can do today—and file for bankruptcy tomorrow; or this year and file for bankruptcy next year or the next 2 or 3 years, or 3 ½ years.

Id. at *S2416. Senator Carper's statement has been cited approvingly by those courts adopting the equity definition of interest. See, e.g., In re Rasmussen, 349

B.R. at 758. Senator Carper's statement is also supported by language in the House Report, which states that "[t]he bill also restricts the so-called 'mansion loophole.' Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate to these states just to take advantage of their 'mansion loophole' laws." H.R. Rep. No. 109-31(I) (2005), 2005 WL 832198, *15-*16. In this case, it is undisputed that Rogers did not relocate to Texas to exploit the so-called "mansion loophole."

Wallace cites to the House Report, which states that "[t]he bill further reduces the opportunity for abuse by requiring a debtor to own the homestead for at least 40 months before he or she can use state exemption law." Id. at *16. Considering the fact that one "owns" property, not a homestead interest, we do not find this piece of legislative history to be particularly probative of congressional intent.

According to Wallace, BAPCPA was intended to address fraudulent transfers in general, including conversions of non-exempt assets into exempt assets within the statutory period. Cf. In re Kane, 336 B.R. 477, 481-82 (Bankr. D. Nev. 2006). We concur with the Reinhard court's observation that "Congress could have defined all [the] debtors' exemptions to be whatever they would have been 1215 days before the filing of the petition. Instead, Congress defined the cap more narrowly." 377 B.R. at 321. We do not believe that Congress was concerned with the timing of the establishment of the homestead when it enacted § 522(p)(1). The statutory text and legislative history indicate that the term "interest" refers to vested economic interests in the property that were acquired by the debtor within the 1,215-day period preceding the filing of the petition. "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent." Lamie,

540 U.S. at 542. We hold that Rogers is entitled to her full homestead exemption under Texas state law.

AFFIRMED.