# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 5, 2010

Lyle W. Cayce
Clerk

No. 08-51281

In the Matter of: FRANK HENRY FEHMEL, JR.; SHARON LEE FEHMEL

Debtors

FRANK HENRY FEHMEL, JR.; SHARON LEE FEHMEL

Appellants

v.

UNION STATE BANK; TEXAS STAR BANK, SSB; CURTIS DURHAM

Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:08-cv-00215-WSS

Before GARWOOD, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant debtors Frank Henry Fehmel, Jr. and Sharon Lee Fehmel appeal from the bankruptcy and district courts' limitation of their homestead exemption. At issue in this appeal is 11 U.S.C. § 522(p)(1), a Bankruptcy Code

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-51281

provision that restricts debtors' ability under state law to exclude the value of their home from their bankruptcy estate and thus shield assets from creditors. Under Texas law, debtors may exempt the total value of a designated "homestead" from their bankruptcy estate. *See* Tex. Const. art. XVI, § 50; Tex. Prop. Code Ann. §§ 41.001-.002 (Vernon 2000 & Supp. 2009); *In re Blair*, 334 B.R. 374, 376 (Bankr. N.D. Tex. 2005). However, § 522(p)(1) of the Bankruptcy Code partially preempts this unlimited exemption. It provides that when a debtor elects:

> to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the [bankruptcy] petition that exceeds in the aggregate [$136,875] in value in . . . real or personal property that the debtor or dependent of the debtor claims as a homestead.

11 U.S.C. § 522(p)(1)(D) (2006).[1] In other words, § 522(p)(1) caps Texas's homestead exemption at $136,875 per debtor for any interest in property acquired 1,215 or fewer days before the petition date (the "lookback period"). However, for any interest acquired more than 1,215 days before the petition date, Texas's homestead exemption remains unlimited. It is undisputed that the Fehmels acquired their home during the lookback period.

The Fehmels assert that the bankruptcy court inappropriately curtailed their homestead exemption by adopting the so-called "title" interpretation of § 522(p)(1). They urge us to break from the bankruptcy court's reasoning and adopt what has been called the "equity" interpretation of § 522(p)(1). They argue that under this interpretation, § 522(p)(1)'s exemption cap would not apply to any appreciation in the value of their homestead caused by market forces after

---

[1] The original text caps exemptions at $125,000, but the cap was indexed for inflation and has now been increased to $136,875. *See Wallace v. Rogers (In re Rogers)*, 513 F.3d 212, 217 n.2 (5th Cir. 2008).

No. 08-51281

they acquired the property. Conversely, appellee Union State Bank[2] argues that the bankruptcy court correctly adopted the "title" interpretation and thereby properly applied § 522(p)(1)'s cap to any lookback period appreciation in the value of the Fehmel's property. However, we conclude that we need not presently adopt either the title or equity interpretations of the statute, nor resolve whether § 522(p)(1)'s cap is applicable to home equity obtained from market appreciation. Like the district court, we find that even if we were to assume that the cap does not reach such appreciation, the evidence presented below does not support granting the Fehmels an exemption any greater than that afforded them by the bankruptcy court. Consequently, we affirm the bankruptcy court's limitation of the Fehmels' exemption to $273,750.

## I.

On May 4, 2005, the Fehmels bought a residence and 150 acres of surrounding land in Lampasas, Texas for $375,000. They made a down payment of $73,841.23 and obtained a mortgage of $304,000 to finance the rest of their purchase. They then moved into the house on the property and, in the years that followed, made certain improvements, remodeling their new home and building a barn, workshop, and guest apartment. Appellee Curtis Durham performed much of the work improving the property, for which the Fehmels paid him approximately $150,000 and traded him a tractor, the value of which was not established below. Durham also filed a claim in these proceedings, asserting that the Fehmels owed him an additional $42,830.87 for his work on the property. Beyond Durham's work, the Fehmels made certain improvements themselves, including $8,000 to $10,000 worth of plumbing work. In its findings of fact, the bankruptcy court did not determine the total value of all of the improvements to the Lampasas property, but they appear to have at least cost

---

[2] Appellees Curtis Durham and Texas State Bank have not submitted any briefing nor participated in this appeal, relying instead on Union State Bank's position in this case.

No. 08-51281

approximately $200,830.87.[3]

Subsequently, on August 28, 2007, the Fehmels filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. In the Fehmels' schedules of assets and liabilities, they listed the value of the Lampasas property as being $700,000.[4] Consequently, between the date the Fehmels purchased the Lampasas property and the petition date, the property appreciated in value by $325,000. The bankruptcy court did not make a specific finding resolving whether market forces, the Fehmels' improvements, or some combination of both were responsible for this appreciation. In their schedules, the Fehmels also listed mortgage debt on the property totaling $297,811.30.[5] As a result, on the petition date, the Lampasas property had a total equity value of $402,188.70.[6]

The Fehmels' 2005 acquisition of the Lampasas property occurred within the lookback period, thereby arguably limiting their homestead exemption to $273,750.[7] However, in their schedules, the Fehmels claimed an exemption of $402,188.70, in other words, the total equity value of their homestead. In response, the chapter 7 trustee and the appellees in this case objected to the claimed exemption, requesting that it be limited to $273,750.

---

[3] Together, the Fehmels' payment of $150,000, Durham's claim of $42,830.87, and $8,000 of plumbing work amount to $200,830.87.

[4] Prior to the petition date, a potential buyer offered the Fehmels $740,000 for the Lampasas property and certain chattels. Frank Fehmel testified that he believed the value of the Lampasas property without the chattels to be $700,000.

[5] Between the Fehmels' acquisition of the Lampasas property and the petition date, they seem to have paid off $6,188.70 of their mortgage.

[6] $700,000 less $297,811.30, the remaining value of the Fehmels' mortgage, is $402,188.70.

[7] Pursuant to 11 U.S.C. § 522(m), the exemption cap established by § 522(p) applies separately to each debtor, creating a cap of $273,750 for the Fehmels rather than $136,875. *See, e.g.*, *In re Rasmussen*, 349 B.R. 747, 755 (Bankr. M.D. Fla. 2006) (concluding that § 522(p)'s exemption cap applies separately to each debtor in joint cases).

No. 08-51281

The bankruptcy court sustained the objection and limited the Fehmels' exemption to $273,750. The court reached this decision by adopting what has been called the "title" interpretation of § 522(p)(1), concluding that the term "interest" used in the provision refers to title or some ownership interest in property. *See, e.g.*, *In re Greene*, 583 F.3d 614, 624-25 (9th Cir. 2009) (adopting title interpretation); *In re Sainlar*, 344 B.R. 669, 673 (Bankr. M.D. Fla. 2006) (same); *Blair*, 334 B.R. at 376-77 (same). Under the title theory, § 522(p)'s cap is triggered solely when a debtor acquires an ownership interest in a homestead within the lookback period. *Greene*, 583 F.3d at 625; *Sainlar*, 344 B.R. at 673; *Blair*, 334 B.R. at 376-77. Since the Fehmels acquired the Lampasas property during the lookback period, the bankruptcy court concluded that the cap applied to the total equity value of the homestead on the petition date.

On appeal, the district court affirmed the bankruptcy court, but under a different rationale. The district court noted that certain courts have found that the term "interest" in § 522(p)(1) refers to equity. *See, e.g.*, *Parks v. Anderson*, 406 B.R. 79, 95 (D. Kan. 2009) (adopting equity interpretation); *Rasmussen*, 349 B.R. at 756 (same). Under this "equity" interpretation, § 522(p)'s cap is triggered by the acquisition of equity in homestead property during the lookback period, even for property originally acquired *before* the lookback period. *See Rogers*, 513 F.3d at 222 n.8 (5th Cir. 2008) (explaining that "[t]he date of acquisition of title is irrelevant for purposes of the equity definition"); *Parks*, 406 B.R. at 86, 95; *Rasmussen*, 349 B.R. at 756, 757 n.5. Notably, courts adopting the equity theory have drawn a distinction between active and passive acquisition of equity during the lookback period; they have concluded that obtaining equity actively falls under § 522(p)(1)'s cap, while obtaining it passively does not. One court has described the distinction between active and passive acquisition of equity as follows:

[A] debtor may acquire or obtain equity either by making a down

5

No. 08-51281

> payment, by paying down the mortgage, or by appreciation due to market conditions. The first two methods of acquiring equity require active conduct on the part of the debtor—payment of money. The third, appreciation, is passive, requiring no active conduct.

*Rasmussen*, 349 B.R. at 757. Consequently, under the equity theory, the appreciation in the value of the Fehmels' property could be excluded from § 522(p)(1)'s cap, if it were passively acquired.

However, the district court concluded that it could affirm the bankruptcy court without formally adopting either the title or equity interpretation, as even under the equity theory, the Fehmels were only entitled to an exemption of $273,750. The court found that the $325,000 appreciation in the value of the Lampasas property was likely attributable to the Fehmels' active investments improving the property. *See Rogers*, 513 F.3d at 222 (assuming that equity acquired due to improving property would be subject to cap); *In re Presto*, 376 B.R. 554, 581-82 (Bankr. S.D. Tex. 2007) (holding that equity acquired due to improving property is subject to cap). Therefore, since the appreciation in the value of the Fehmels' homestead was not due to passive market appreciation, the court held that the appreciation was subject to § 522(p)(1)'s cap on exemptions. The present appeal followed.

## II.

"The bankruptcy court's findings of fact are subject to clearly erroneous review, while its conclusions of law are reviewed de novo." *Rogers*, 513 F.3d at 216. The parties do not contest any of the bankruptcy court's specific findings of fact, which we have described in the preceding section.

We conclude that the bankruptcy court and district court did not err in limiting the Fehmels' exemption to $273,750. Like the district court, we reach this conclusion without adopting either the title or equity interpretations of the

No. 08-51281

statute.[8]  Even if we were to assume that § 522(p)(1)'s cap only applies to actively acquired equity, and not to equity passively obtained from market appreciation, the bankruptcy court's findings of fact do not show that the Fehmels would be entitled to an exemption any greater than $273,750.

Under Fed. R. Bankr. P. 4003(c), "the objecting party has the burden of proving that the exemptions are not properly claimed."  Objectors "must establish that the exemption is improper by a preponderance of the evidence." *Presto*, 376 B.R. at 563.  The Ninth Circuit has described the burden shifting framework created by Rule 4003(c) in the following terms:

> A claimed exemption is presumptively valid. . . .  Once an exemption has been claimed, it is the objecting party's burden . . . to prove that the exemption is not properly claimed.  Initially, this means that the objecting party has the burden of production and the burden of persuasion.  The objecting party must produce evidence to rebut the presumptively valid exemption.  If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper.  The burden of persuasion, however, always remains with the objecting party.

*Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999) (internal quotation marks and citations removed); *see also Pequeno v. Schmidt*, 307 B.R. 568, 584 (S.D. Tex. 2004) (describing burden shifting process), *aff'd*, 126 F. App'x 158 (5th Cir. 2005).

In this case, the unchallenged findings of fact show that under the equity interpretation of § 522(p)(1), the Fehmels would not be entitled to their claimed exemption of $402,188.70, the full equity value of their homestead.  At the very least, the Fehmels actively acquired approximately $278,019.57 of the equity in

---

[8] Similarly, in *Wallace v. Rogers (In re Rogers)*, we also passed on an opportunity to adopt either the title or equity interpretations of § 522(p)(1), finding that it was unnecessary to the resolution of the case before us at that time.  513 F.3d at 222-23.

7

the Lampasas property:  $71,000 from their down payment,[9] $6,188.70 from their mortgage payments, and $200,830.87 from the cost of their improvements. Under the equity interpretation, all of this actively acquired equity would be capped at $273,750, demonstrating that the Fehmels clearly have no right to exempt the full equity value of the Lampasas property from their estate.[10]

However, it is probable that the Fehmels actively acquired far more than $278,019.57 of the equity in their homestead:  The extensive improvements to the Lampasas property more likely than not acted synergistically to increase its value by more than their cost.  We conclude that Union State Bank has satisfied its burden by pointing to this evidence demonstrating that the Fehmels' exemption was improperly claimed.  As such, this evidence is sufficient to shift the burden of production to the Fehmels "to come forward with unequivocal evidence to demonstrate that [their] exemption is proper."  *Carter*, 182 F.3d at 1029 n.3.  However, they have made no such showing.[11]  Given the extensive improvements made to the Lampasas property and the Fehmels' failure to meet their burden of production,[12] we find that all of the appreciation was attributable

---

[9] The bankruptcy court found that the Fehmels made a down payment of $73,841.23. However, they took out a mortgage of $304,000 on the property, larger than was necessary to finance the rest of its purchase price of $375,000.  Consequently, when the Fehmels took title to the Lampasas property, they only had equity in their property of $71,000, not $73,841.23.

[10] If the Fehmels acquired $278,019.57 of the equity in their homestead actively, and such equity is capped at $273,750, then at the very least, $4,269.57 of the Fehmels' exemption would be improperly claimed.

[11] For example, the Fehmels likely could have introduced evidence showing whether similar properties in Lampasas appreciated during the same period without any improvements.

[12] We note that this case bears some resemblance to the many cases where courts have reviewed debtors' exemption of the proceeds of settlement agreements from their bankruptcy estates.  In such cases, courts have held that debtors do not have the initial burden of breaking down these awards into exempt proceeds for bodily injury and nonexempt proceeds for pain and suffering.  *See, e.g.*, *In re Harrington*, 306 B.R. 172, 183 (Bankr. E.D. Tex. 2003) (holding that objector "cannot escape the burden of proof assigned to an objecting party under Rule

No. 08-51281

to the Fehmels' improvements,[13] and thus is actively acquired home equity subject to the statute's $273,750 cap.

III.

Accordingly, we AFFIRM the bankruptcy and district courts' limitation of the Fehmels' homestead exemption to $273,750.[14]

---

4003(c) because the exemption claim relates to a settlement agreement which fails to allocate damages into specific categories of recovery"); *Lester v. Storey (In re Lester)*, 141 B.R. 157, 162 (S.D. Ohio 1991) (holding that "the burden of proof is initially placed upon the [objector] with respect to any objections he files, and . . . this burden does not shift to the Debtor merely upon a showing that the Debtor has failed to allocate the personal injury settlement into its various component parts"). In this case, the Fehmels' decision to claim the total equity value of their homestead as exempt, without breaking down actively from passively acquired equity, has not shifted the burden to them to demonstrate the validity of their exemption. Instead, the bankruptcy court's findings of fact have demonstrated by a preponderance that the Fehmels' exemption was improperly claimed.

[13] Admittedly, the bankruptcy court's findings of fact may not clearly and convincingly demonstrate that all appreciation in the value of the Lampasas property was attributable to the Fehmels' improvements. However, Union State Bank has only needed to show that the Fehmels' exemption is improper by a preponderance of the evidence. *See Kelley v. Locke (In re Kelley)*, 300 B.R. 11, 16-17 (B.A.P. 9th Cir. 2003) (explaining that preponderance standard is satisfied when "proposition is more likely true than not" (quoting *United States ex rel. Farmers Home Admin. v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994)). Union State Bank has met this burden.

[14] The bankruptcy court granted the Fehmels an exemption of $273,750, in addition to any post-petition principal reduction for the mortgage on the Lampasas property. Union State Bank has not challenged this portion of the bankruptcy court's order, and we have not reviewed it on this appeal.